**UNITED STATES of America, Plaintiff,**

v.

**Sidney DAVIDSON, as fiduciary and executor of the Jerome Crane Estate, and Sidney Davidson as fiduciary and trustee of the Jerome M. Crane Trust, Defendant.**

No. 97–Z–1029.

United States District Court, D. Colorado.

July 8, 1999.

Philip Blondin, Arthur P. Yoon, U.S. Department of Justice, Tax Division, Washington, DC, for USA, plaintiff.

Joseph H. Thibodeau, Kandace Cecilia Gerdes, David Samuel Allen, Joseph H. Thibodeau, P.C., Denver, CO, for Sidney Davidson, Sidney (TRSTE) Davidson, defendant.

John Debruyn, Debruyn & Atlass, Denver, CO, for Colorado Bar Association, amicus.

### MEMORANDUM OPINION AND ORDER

WEINSHIENK, Senior District Judge.

This matter is before the Court on cross-motions for summary judgment.

Jurisdiction is based on 28 U.S.C. § 1340 and 26 U.S.C. § 7402(a). Plaintiff United States of America brings this lawsuit to recover money owed by defendant Sidney Davidson for tax deficiencies totaling $1,005,178.51 for the years 1980, 1981, and 1993. In an attempt to collect on this tax deficiency, the government, pursuant to 26 U.S.C. § 6361, filed tax liens on defendant's property. On April 26, 1993, one Jerome M. Crane died and left defendant Davidson, Crane's nephew by marriage, as the fiduciary and executor of the estate of Jerome M. Crane, and also the fiduciary and trustee for the Jerome M. Crane Trust. Davidson is named as a devisee of the estate and a beneficiary of the Trust as well. On or about November 9, 1995, the United States Government filed notices of levy against the two estates to satisfy the debt owed by defendant. A final demand was made on or about February 2, 1996. This Court must determine whether the federal government can levy on the properties that defendant stood to receive as a beneficiary of the estate and the trust.

## I. BACKGROUND

Both parties agree regarding the essential facts of this case. There is no dispute as to the amount of debt owed by defendant to the federal government, or that defendant was designated as a beneficiary of the estate and the trust. In addition, the parties agree that under Colorado law a person has a right to choose whether to inherit property left to them, and that defendant Davidson filed a valid renunciation under state law disclaiming his interest in the two estates on or about August 18, 1993. Thus, because there is no dispute as to material facts, the cross-motions

for summary judgment may be decided as a matter of law. The Court has reviewed the briefs of the parties as well as an amicus brief filed by the Taxation Law Section and the Trust And Estate Section of the Colorado Bar Association, and is familiar with the facts and circumstances of the case.

## II. CHOICE OF LAW

This case presents the issue of whether a valid lien, pursuant to a federal statute, can attach to defendant's right to choose whether to inherit property. This question appears to be a matter of first impression for the federal court in the District of Colorado and for the United States Court of Appeals for the Tenth Circuit. However, four circuit courts have addressed essentially the identical issue with the Fifth and Ninth Circuits deciding one way and the Second and Eighth Circuits going the other way.[1]

Federal tax statute 26 U.S.C. § 6321 allows the government to file a lien against any property or right to property of a taxpayer for outstanding debt.[2] The statute reads, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all 'property' and 'rights to property,' whether real or personal belonging to such person." 26 U.S.C. § 6321. However, the federal statute is silent as to the definition of "property" or "rights to property." In view of this statutory silence, as a preliminary matter, the Court must decide whether to rely on state or federal law in applying the federal statute.[3]

---

**1.** *Compare Leggett v. United States,* 120 F.3d 592 (5th Cir.1997), *and Mapes v. United States,* 15 F.3d 138 (9th Cir.1994), *with Drye Family 1995 Trust v. United States,* 152 F.3d 892 (8th Cir.1998), *cert. granted in part,* —— U.S.——, 119 S.Ct. 1453, 143 L.Ed.2d 540 (U.S. 1999), *and United States v. Comparato,* 22 F.3d 455 (2nd Cir.1994).

**2.** To enforce the lien, the government must file a notice of levy against the property pur-

suant to 26 U.S.C. § 6331. In the present case, the government has taken all necessary steps to enforce the valid lien obtained against defendant Davidson.

**3.** Obviously, Congress could obviate the need for a choice of law analysis by amending the statute to either define property or include a choice of law section.

Over 40 years ago, the United States Supreme Court struggled with the issue of whether state or federal law determined what was "property" or "rights to property" to which a federal lien could attach. *See United States v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). In *Bess*, the issue presented was whether the government could file a lien on a tax debtor's insurance policy. The Supreme Court held that an owner of a life insurance policy did not have state property rights in the future death proceeds of the life insurance policy, but did have state property rights in the cash surrender value of the policy. Thus, as to the death proceeds, federal tax liens could not attach. However, as to the surrender value, federal tax liens could attach to these state property rights despite the fact that the surrender value was not subject to state creditor's liens.

■ A few years later, the Supreme Court clarified this ruling by holding that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property." *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). This holding made clear that federal law does not create property rights, but merely attaches consequences, such as federal tax liens, to property rights created under state law. In *Aquilino*, the Court explained the policy behind the holding: "This approach strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens, and the necessity for a uniform administration of the federal revenue statutes." *Aquilino*, 363 U.S. at 514, 80 S.Ct. 1277, 4 L.Ed.2d 1365.

The *Bess–Aquilino* line of cases stood firmly as the law of the land for the next 25 years until the issue was raised again in *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). In the present case at bar, the government relies on *National Bank* to support its position that a tax lien can attach to Davidson's right to choose whether to inherit property as a matter of federal law. Building on the suggestion of Justice Powell's dissenting opinion in *National Bank*, the government's position is that the majority opinion in *National Bank* effectively overruled *Bess* and *Aquilino sub silentio*. *See United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919 (1985) (Powell, J., dissenting).

While the language in *National Bank* has been subject to considerable debate, this Court does not interpret *National Bank* as overruling *Bess* and *Aquilino*. Both *Bess* and *Aquilino* are cited by the majority decision with approval. *See e.g., National Bank*, 472 U.S. at 722, 727, 105 S.Ct. 2919. There is no sign from the treatment of either of these cases that they have been overruled.

Moreover, the essential statement from *National Bank* that the Government uses as its authority, "the question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law," is cited as if it was a quotation taken directly from *Bess*. *See National Bank*, 472 U.S. at 727, 105 S.Ct. 2919. This citation is incorrect, as *Bess* does not contain the language attributed to it. However, even understanding this quotation as the essential holding of *National Bank*, as the government argues, a difficulty emerges. Essentially, the government's reading of the above quotation means that *National Bank* cites *Bess* as an authority to overrule *Bess*. A case cannot overrule itself. In view of the weakness of this crucial argument by the government, and the favorable treatment of *Bess* and *Aquilino* in the majority decision of *National Bank*, it is clear that *National Bank* does not overrule *Bess* and *Aquilino*.

Lastly, this Court will not assume that *National Bank* ignored the *stare decisis* effect of *Bess* and *Aquilino* in interpreting a federal statute. While no explicit discussion of this issue appears in *National*

*Bank,* considerations of *stare decisis* are especially forceful when the Supreme Court is interpreting federal statutory law because Congress has an opportunity to respond. *See e.g., Hilton v. South Carolina Public Railways Commission,* 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991); *Patterson v. McLean Credit Union,* 491 U.S. 164, 175 n. 1, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) ("considerations of stare decisis have added force in statutory cases because Congress may alter what we have done by amending the statute"). Twenty-five year old precedents interpreting Congressional intent regarding a tax statute do not vanish without a discussion as to why they are no longer the law.

In view of *National Bank's* discussion of *Bess* and *Aquilino,* and the role of *stare decisis* in interpreting federal statutes, this Court does not interpret *National Bank* as effectively overruling *Bess* or *Aquilino.* Instead, *National Bank* should be read to support the holdings of *Aquilino* and *Bess* that state law, not federal, determines the nature of the taxpayer's legal interest in the property. *See National Bank,* 472 U.S. at 722, 105 S.Ct. 2919. Accordingly, this case hinges on whether a right to choose whether to inherit is a property right as a matter of Colorado law.

## III. COLORADO LAW

In Colorado, at the time of Jerome Crane's death in 1987, COLO.REV.STAT. § 15–11–801 allowed a potential beneficiary to renounce and disclaim any interest in property that is bequeathed by will.[4] Similarly, COLO.REV.STAT. § 15–1–901 allowed a grantee to renounce any interest bequeathed in a non-testamentary instrument or contract.[5] Under either provision of the 1987 version of the Colorado statute, the disclaimer or renunciation must take place within nine months of the death of the testator or grantor. Once the interest is renounced or disclaimed by the potential beneficiary or grantee, the statute distributes the property as if the beneficiary predeceased the testator.[6] The language of the Colorado statute is taken from the

---

4. COLO.REV.STAT. § 15–11–801 (1987) (amended 1995):

> 1) A person ... who is an heir, devisee, person succeeding to a renounced interest, beneficiary under a testamentary instrument, ... may renounce in whole or in part the succession to any property or interest therein by filing a written instrument within the time and at the place provided in this section. The instrument shall describe the part thereof or interest therein renounced, be signed by the person renouncing, and declare the renunciation and the extent thereof.
> 3) Unless the decedent or donee of the power has otherwise indicated by his will, the interest renounced, and any future interest which is to take effect in possession or enjoyment at or after the termination of the interest renounced, passes as if the person renouncing had predeceased the decedent, or if the person renouncing is one designated to take pursuant to a power of appointment exercised by a testamentary instrument, as if the person renouncing had predeceased the donee of the power. In every case the renunciation relates back for all purposes to the date of death of the decedent or the donee, as the case may be.

5. COLO.REV.STAT. § 15–1–901 (1987) (repealed 1994):

> 1) A person ... who is grantee, donee, [or] ... beneficiary under a nontestamentary instrument or contract, or person designated to take pursuant to a power of appointment ... may disclaim in whole or in part the right of succession or transfer to him of any property, real or personal, or interest therein by delivering or filing a written disclaimer within the time and at the place as provided in section 15–1–902.
> 2) The disclaimer shall describe the property or part thereof or interest therein disclaimed, declare the disclaimer and the extent thereof, and be signed and acknowledged by the disclaimant.

6. COLO.REV.STAT. § 15–1–903 (1987) (repealed 1994):

> 1) Unless otherwise provided in the nontestamentary instrument, the property or part thereof or interest therein disclaimed ... shall be distributed as if the disclaimant had died before the effective date of the nontestamentary instrument or, if later, before the disclaimant was finally ascertained to be the taker ... and the disclaimer shall relate back for all purposes to that date.

Uniform Probate Code and is essentially indistinguishable from a number of other state statutes. *See Leggett*, 120 F.3d at 596.

The Colorado statute's purpose in distributing the property as if the beneficiary predeceased the testator is to correct an unfair situation that arose under the common law. *Id.* at 595. At common law, a beneficiary under a will could renounce a gift and thus avoid the tax consequences while the non-testamentary beneficiary could not avoid the tax liabilities by renouncing the gift. With this statute in place, beneficiaries to a will and beneficiaries by statute face the same tax consequences.

■ While the Colorado statute solves this common law tax problem, there remains the issue of whether the person disclaiming an interest ever has a property interest as a matter of state law. State law can follow either the Acceptance–Rejection Theory or the Transfer Theory. *See Leggett*, 120 F.3d at 595. If the state follows the Acceptance–Rejection Theory, a property interest vests only when the beneficiary accepts the gift or the grant. Thus, a person who disclaims or renounces an inheritance never has a right to property as a matter of state law. *Id.* In contrast, under the Transfer Theory, the property vests in the beneficiary immediately upon the death of the testator or grantor, and a renunciation functions as a transfer of interest from the beneficiary to the next beneficiary. Even if the person never enjoys the use of the property, in a Transfer Theory jurisdiction, a right to inherit is a right to property as a matter of state law.

After reviewing the Colorado statute, and the applicable case law, this Court determines that Colorado is an Acceptance–Rejection jurisdiction.[7] Thus, as a matter of Colorado law, a right to choose whether to inherit is not a right to property. Consequently, because the right to choose whether to inherit is not a state property right, the federal lien pursuant to 26 U.S.C. § 6321 cannot attach. Accordingly, it is

ORDERED that defendant's Motion For Summary Judgment is granted. It is

FURTHER ORDERED that United States' Cross–Motion For Summary Judgment is denied. It is

FURTHER ORDERED that the Complaint and cause of action are dismissed with prejudice.

---

7.  *See e.g., Hoecker v. United Bank of Boulder,* 476 F.2d 838 (10th Cir.1973); *Matter of Colacci's Estate,* 37 Colo.App. 369, 549 P.2d 1096 (Colo.App.1976). Further, on February 26, 1999, an Amicus Brief On Behalf Of The Taxation Law Section And The Trust And Estate Section Of The Colorado Bar Association was filed. The Taxation Law Section and the Trust And Estate Section of the Colorado Bar Association on pages seven and eight of the brief state that Colorado is an Acceptance–Rejection jurisdiction. It should be noted that during oral argument attorney for the federal government stated that plaintiff did not have a position regarding whether Colorado is an Acceptance–Rejection jurisdiction.