# DRYE ET AL. *v.* UNITED STATES

No. 98–1101.  Argued November 8, 1999—Decided December 7, 1999

GINSBURG, J., delivered the opinion for a unanimous Court.

*Daniel M. Traylor* argued the cause and filed a brief for petitioners.

*Kent L. Jones* argued the cause for the United States. With him on the brief were *Solicitor General Waxman, As-*

*sistant Attorney General Argrett, Deputy Solicitor General Wallace, David I. Pincus,* and *Anthony T. Sheehan.*

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the respective provinces of state and federal law in determining what is property for purposes of federal tax lien legislation. At the time of his mother's death, petitioner Rohn F. Drye, Jr., was insolvent and owed the Federal Government some $325,000 on unpaid tax assessments for which notices of federal tax liens had been filed. His mother died intestate, leaving an estate with a total value of approximately $233,000 to which he was sole heir. After the passage of several months, Drye disclaimed his interest in his mother's estate, which then passed by operation of state law to his daughter. This case presents the question whether Drye's interest as heir to his mother's estate constituted "property" or a "righ[t] to property" to which the federal tax liens attached under 26 U. S. C. § 6321, despite Drye's exercise of the prerogative state law accorded him to disclaim the interest retroactively.

We hold that the disclaimer did not defeat the federal tax liens. The Internal Revenue Code's prescriptions are most sensibly read to look to state law for delineation of the taxpayer's rights or interests, but to leave to federal law the determination whether those rights or interests constitute "property" or "rights to property" within the meaning of § 6321. "[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the federal tax lien provision], state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States." *United States* v. *Bess,* 357 U. S. 51, 56–57 (1958).

I

A

The relevant facts are not in dispute. On August 3, 1994, Irma Deliah Drye died intestate, leaving an estate worth

approximately $233,000, of which $158,000 was personalty and $75,000 was realty located in Pulaski County, Arkansas. Petitioner Rohn F. Drye, Jr., her son, was sole heir to the estate under Arkansas law. See Ark. Code Ann. § 28–9–214 (1987) (intestate interest passes "[f]irst, to the children of the intestate"). On the date of his mother's death, Drye was insolvent and owed the Government approximately $325,000, representing assessments for tax deficiencies in years 1988, 1989, and 1990. The Internal Revenue Service (IRS or Service) had made assessments against Drye in November 1990 and May 1991 and had valid tax liens against all of Drye's "property and rights to property" pursuant to 26 U. S. C. § 6321.

Drye petitioned the Pulaski County Probate Court for appointment as administrator of his mother's estate and was so appointed on August 17, 1994. Almost six months later, on February 4, 1995, Drye filed in the Probate Court and land records of Pulaski County a written disclaimer of all interests in his mother's estate. Two days later, Drye resigned as administrator of the estate.

Under Arkansas law, an heir may disavow his inheritance by filing a written disclaimer no later than nine months after the death of the decedent. Ark. Code Ann. §§ 28–2–101, 28–2–107 (1987). The disclaimer creates the legal fiction that the disclaimant predeceased the decedent; consequently, the disclaimant's share of the estate passes to the person next in line to receive that share. The disavowing heir's creditors, Arkansas law provides, may not reach property thus disclaimed. § 28–2–108. In the case at hand, Drye's disclaimer caused the estate to pass to his daughter, Theresa Drye, who succeeded her father as administrator and promptly established the Drye Family 1995 Trust (Trust).

On March 10, 1995, the Probate Court declared valid Drye's disclaimer of all interest in his mother's estate and accordingly ordered final distribution of the estate to Theresa Drye. Theresa Drye then used the estate's proceeds to fund the Trust, of which she and, during their lifetimes, her

parents are the beneficiaries. Under the Trust's terms, distributions are at the discretion of the trustee, Drye's counsel Daniel M. Traylor, and may be made only for the health, maintenance, and support of the beneficiaries. The Trust is spendthrift, and under state law, its assets are therefore shielded from creditors seeking to satisfy the debts of the Trust's beneficiaries.

Also in 1995, the IRS and Drye began negotiations regarding Drye's tax liabilities. During the course of the negotiations, Drye revealed to the Service his beneficial interest in the Trust. Thereafter, on April 11, 1996, the IRS filed with the Pulaski County Circuit Clerk and Recorder a notice of federal tax lien against the Trust as Drye's nominee. The Service also served a notice of levy on accounts held in the Trust's name by an investment bank and notified the Trust of the levy.

B

On May 1, 1996, invoking 26 U. S. C. § 7426(a)(1), the Trust filed a wrongful levy action against the United States in the United States District Court for the Eastern District of Arkansas. The Government counterclaimed against the Trust, the trustee, and the trust beneficiaries, seeking to reduce to judgment the tax assessments against Drye, confirm its right to seize the Trust's assets in collection of those debts, foreclose on its liens, and sell the Trust property. On cross-motions for summary judgment, the District Court ruled in the Government's favor.

The United States Court of Appeals for the Eighth Circuit affirmed the District Court's judgment. *Drye Family 1995 Trust* v. *United States,* 152 F. 3d 892 (1998). The Court of Appeals understood our precedents to convey that "state law determines whether a given set of circumstances creates a right or interest; federal law then dictates whether that right or interest constitutes 'property' or the 'right to property' under § 6321." *Id.,* at 898.

We granted certiorari, 526 U. S. 1063 (1999), to resolve a conflict between the Eighth Circuit's holding and decisions of the Fifth and Ninth Circuits.[1]  We now affirm.

## II

Under the relevant provisions of the Internal Revenue Code, to satisfy a tax deficiency, the Government may impose a lien on any "property" or "rights to property" belonging to the taxpayer.   Section 6321 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."   26 U. S. C. § 6321. A complementary provision, § 6331(a), states:

> "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax . . . by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax."[2]

---

[1] In the view of those courts, state law holds sway.   Under their approach, in a State adhering to an acceptance-rejection theory, under which a property interest vests only when the beneficiary accepts the inheritance or devise, the disclaiming taxpayer prevails and the federal liens do not attach.   If, instead, the State holds to a transfer theory, under which the property is deemed to vest in the beneficiary immediately upon the death of the testator or intestate, the taxpayer loses and the federal lien runs with the property.   See *Leggett* v. *United States,* 120 F. 3d 592, 594 (CA5 1997); *Mapes* v. *United States,* 15 F. 3d 138, 140 (CA9 1994); accord, *United States* v. *Davidson,* 55 F. Supp. 2d 1152, 1155 (Colo. 1999).   Drye maintains that Arkansas adheres to the acceptance-rejection theory.

[2] The Code further provides:

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."   26 U. S. C. § 6322.

The language in §§ 6321 and 6331(a), this Court has observed, "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States* v. *National Bank of Commerce*, 472 U. S. 713, 719–720 (1985) (citing 4 B. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 111.5.4, p. 111–100 (1981)); see also *Glass City Bank* v. *United States*, 326 U. S. 265, 267 (1945) ("Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes."). When Congress so broadly uses the term "property," we recognize, as we did in the context of the gift tax, that the Legislature aims to reach " 'every species of right or interest protected by law and having an exchangeable value.' " *Jewett* v. *Commissioner*, 455 U. S. 305, 309 (1982) (quoting S. Rep. No. 665, 72d Cong., 1st Sess., 39 (1932); H. R. Rep. No. 708, 72d Cong., 1st Sess., 27 (1932)).

Section 6334(a) of the Code is corroborative. That provision lists property exempt from levy. The list includes 13 categories of items; among the enumerated exemptions are certain items necessary to clothe and care for one's family, unemployment compensation, and workers' compensation benefits. §§ 6334(a)(1), (2), (4), (7). The enumeration contained in § 6334(a), Congress directed, is exclusive: "Notwithstanding any other law of the United States . . . , no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." § 6334(c). Inheritances or devises disclaimed under state law are not included in § 6334(a)'s catalog of property exempt from levy. See *Bess*, 357 U. S., at 57 ("The fact that . . . Congress provided specific exemptions from distraint is evidence that Congress did not intend to recognize further exemptions which would prevent attachment of [federal tax] liens[.]"); *United States* v. *Mitchell*, 403 U. S. 190, 205 (1971) ("Th[e] language [of § 6334] is specific and it is clear and there is no room in it for automatic exemption of property that

happens to be exempt from state levy under state law."). The absence of any recognition of disclaimers in §§ 6321, 6322, 6331(a), and 6334(a) and (c), the relevant tax collection provisions, contrasts with § 2518(a) of the Code, which renders qualifying state-law disclaimers "with respect to any interest in property" effective for federal wealth-transfer tax purposes and for those purposes only.[3]

Drye nevertheless refers to cases indicating that state law is the proper guide to the critical determination whether his interest in his mother's estate constituted "property" or "rights to property" under § 6321. His position draws support from two recent appellate opinions: *Leggett* v. *United States*, 120 F. 3d 592, 597 (CA5 1997) ("Section 6321 adopts the state's definition of property interest."); and *Mapes* v. *United States*, 15 F. 3d 138, 140 (CA9 1994) ("For the answer to th[e] question [whether taxpayer had the requisite interest in property], we must look to state law, not federal law."). Although our decisions in point have not been phrased so meticulously as to preclude Drye's argument,[4] we are satisfied that the Code and interpretive case law place under federal, not state, control the ultimate issue whether a taxpayer has a beneficial interest in any property subject to levy for unpaid federal taxes.

---

[3] See Pennell, Recent Wealth Transfer Tax Developments, in Sophisticated Estate Planning Techniques 69, 117–118 (ALI–ABA Continuing Legal Ed. 1997) ("The fact that a qualified disclaimer by an estate beneficiary is deemed to relate back to the decedent's death for state property law or federal gift tax purposes is not sufficient to preclude a federal tax lien for the disclaimant's delinquent taxes from attaching to the disclaimed property as of the moment of the decedent's death. . . . [T]he qualified disclaimer provision in § 2518 only applies for purposes of Subtitle B and the lien provisions are in Subtitle F.").

[4] See, *e. g., United States* v. *National Bank of Commerce*, 472 U. S. 713, 722 (1985) ("[T]he federal statute 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'") (quoting *United States* v. *Bess*, 357 U. S. 51, 55 (1958)).

## III

As restated in *National Bank of Commerce:* "The question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law." 472 U. S., at 727. We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as "property" or "rights to property" within the compass of the federal tax lien legislation. Cf. *Morgan* v. *Commissioner*, 309 U. S. 78, 80 (1940) ("State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed.").

In line with this division of competence, we held that a taxpayer's right under state law to withdraw the whole of the proceeds from a joint bank account constitutes "property" or the "righ[t] to property" subject to levy for unpaid federal taxes, although state law would not allow ordinary creditors similarly to deplete the account. *National Bank of Commerce*, 472 U. S., at 723–727. And we earlier held that a taxpayer's right under a life insurance policy to compel his insurer to pay him the cash surrender value qualifies as "property" or a "righ[t] to property" subject to attachment for unpaid federal taxes, although state law shielded the cash surrender value from creditors' liens. *Bess*, 357 U. S., at 56–57.[5] By contrast, we also concluded, again as a matter of

---

[5] Accord, *Bank One Ohio Trust Co.* v. *United States*, 80 F. 3d 173, 176 (CA6 1996) ("Federal law did not create [the taxpayer's] equitable income interest [in a spendthrift trust], but federal law must be applied in determining whether the interest constitutes 'property' for purposes of § 6321."); *21 West Lancaster Corp.* v. *Main Line Restaurant, Inc.*, 790 F. 2d 354, 357–358 (CA3 1986) (although a liquor license did not constitute "property" and could not be reached by creditors under state law, it was nevertheless "property" subject to federal tax lien); W. Plumb, Federal Tax Liens 27 (3d ed. 1972) ("[I]t is not material that the economic benefit to which the [taxpayer's local law property] right pertains is not characterized as 'property' by local law.").

federal law, that no federal tax lien could attach to policy proceeds unavailable to the insured in his lifetime. *Id.*, at 55–56 ("It would be anomalous to view as 'property' subject to lien proceeds never within the insured's reach to enjoy.").[6]

Just as "exempt status under state law does not bind the federal collector," *Mitchell*, 403 U. S., at 204, so federal tax law "is not struck blind by a disclaimer," *United States* v. *Irvine*, 511 U. S. 224, 240 (1994). Thus, in *Mitchell*, the Court held that, although a wife's renunciation of a marital interest was treated as retroactive under state law, that state-law disclaimer did not determine the wife's liability for federal tax on her share of the community income realized before the renunciation. See 403 U. S., at 204 (right to renounce does not indicate that taxpayer never had a right to property).

## IV

The Eighth Circuit, with fidelity to the relevant Code provisions and our case law, determined first what rights state law accorded Drye in his mother's estate. It is beyond debate, the Court of Appeals observed, that under Arkansas

---

[6] Compatibly, in *Aquilino* v. *United States*, 363 U. S. 509 (1960), we held that courts should look first to state law to determine "'the nature of the legal interest'" a taxpayer has in the property the Government seeks to reach under its tax lien. *Id.*, at 513 (quoting *Morgan* v. *Commissioner*, 309 U. S. 78, 82 (1940)). We then reaffirmed that federal law determines whether the taxpayer's interests are sufficient to constitute "property" or "rights to property" subject to the Government's lien. 363 U. S., at 513–514. We remanded in *Aquilino* for a determination whether the contractor-taxpayer held any beneficial interest, as opposed to "bare legal title," in the funds at issue. *Id.*, at 515–516; see also Note, Property Subject to the Federal Tax Lien, 77 Harv. L. Rev. 1485, 1491 (1964) ("*Aquilino* supports the view that the Court has chosen to apply a federal test of classification, for the contractor concededly had legal title to the funds and yet in remanding the Court indicated that this state-created incident of ownership was not a sufficient 'right to property' in the contract proceeds to allow the tax lien to attach. In this sense *Aquilino* follows *Bess* in requiring that the taxpayer must have a beneficial interest in any property subject to the lien." (footnote omitted)).

law Drye had, at his mother's death, a valuable, transferable, legally protected right to the property at issue. See 152 F. 3d, at 895 (although Code does not define "property" or "rights to property," appellate courts read those terms to encompass "state-law rights or interests that have pecuniary value and are transferable"). The court noted, for example, that a prospective heir may effectively assign his expectancy in an estate under Arkansas law, and the assignment will be enforced when the expectancy ripens into a present estate. See *id.*, at 895–896 (citing several Arkansas Supreme Court decisions, including: *Clark* v. *Rutherford,* 227 Ark. 270, 270–271, 298 S. W. 2d 327, 330 (1957); *Bradley Lumber Co. of Ark.* v. *Burbridge,* 213 Ark. 165, 172, 210 S. W. 2d 284, 288 (1948); *Leggett* v. *Martin,* 203 Ark. 88, 94, 156 S. W. 2d 71, 74–75 (1941)).[7]

Drye emphasizes his undoubted right under Arkansas law to disclaim the inheritance, see Ark. Code Ann. § 28–2–101 (1987), a right that is indeed personal and not marketable. See Brief for Petitioners 13 (right to disclaim is not transferable and has no pecuniary value). But Arkansas law primarily gave Drye a right of considerable value—the right either to inherit or to channel the inheritance to a close family member (the next lineal descendant). That right simply cannot be written off as a mere "personal right . . . to accept or reject [a] gift." *Ibid.*

In pressing the analogy to a rejected gift, Drye overlooks this crucial distinction. A donee who declines an *inter vivos*

---

[7] In recognizing that state-law rights that have pecuniary value and are transferable fall within § 6321, we do not mean to suggest that transferability is essential to the existence of "property" or "rights to property" under that section. For example, although we do not here decide the matter, we note that an interest in a spendthrift trust has been held to constitute "'property' for purposes of § 6321" even though the beneficiary may not transfer that interest to third parties. See *Bank One,* 80 F. 3d, at 176. Nor do we mean to suggest that an expectancy that has pecuniary value and is transferable under state law would fall within § 6321 prior to the time it ripens into a present estate.

gift generally restores the status quo *ante*, leaving the donor to do with the gift what she will. The disclaiming heir or devisee, in contrast, does not restore the status quo, for the decedent cannot be revived. Thus the heir inevitably exercises dominion over the property. He determines who will receive the property—himself if he does not disclaim, a known other if he does. See Hirsch, The Problem of the Insolvent Heir, 74 Cornell L. Rev. 587, 607–608 (1989). This power to channel the estate's assets warrants the conclusion that Drye held "property" or a "righ[t] to property" subject to the Government's liens.

\* \* \*

In sum, in determining whether a federal taxpayer's state-law rights constitute "property" or "rights to property," "[t]he important consideration is the breadth of the control the [taxpayer] could exercise over the property." *Morgan,* 309 U. S., at 83. Drye had the unqualified right to receive the entire value of his mother's estate (less administrative expenses), see *National Bank of Commerce,* 472 U. S., at 725 (confirming that unqualified "right to receive property is itself a property right" subject to the tax collector's levy), or to channel that value to his daughter. The control rein he held under state law, we hold, rendered the inheritance "property" or "rights to property" belonging to him within the meaning of § 6321, and hence subject to the federal tax liens that sparked this controversy.

For the reasons stated, the judgment of the Court of Appeals for the Eighth Circuit is

*Affirmed.*