Sylvia HAWTHORNE, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 1:06CV1590.

United States District Court, N.D. Ohio, Eastern Division.

Sept. 10, 2007.

Patricia M. Ritzert, Climaco, Lefkowitz, Peca, Wilcox & Garofoli, Cleveland, OH, for Plaintiff.

Gustave C. Martschink, III, Alex T. Case, Elizabeth Lan Davis, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

PATRICIA A. HEMANN, United States Magistrate Judge.

Pending before the court on consent is the United States' ("IRS") Motion for Summary Judgment. Plaintiff Sylvia Hawthorne ("S.Hawthorne") is the wife of Nathaniel Hawthorne ("N.Hawthorne") and has been since April 1970. S. Hawthorne and N. Hawthorne live together in the Northern District of Ohio. In April 2003 N. Hawthorne filed his tax return for the tax year 2002, reporting a taxable income of $1,499,382.00. In June 2003 the Internal Revenue Service ("IRS") assessed a tax of $608,582.00. N. Hawthorne submitted partial payment with his return. In July 2006, however, he had a tax liability of $293,935.00.

On April 28, 2006 the IRS levied on bank accounts in the name of S. Hawthorne as nominee, transferee, fraudulent conveyee, and/or alter ego of N. Hawthorne at three separate banks, National City Bank, Fifth Third Bank, and Key-Bank. The levies were imposed to set off a portion of the N. Hawthorne's outstanding liability. In June 2006 S. Hawthorne

filed this wrongful levy action, contending that the IRS had removed from the banks $25,831.20 that was rightfully in her name and not funds in which N. Hawthorne had an interest. Plaintiff further contends that she is entitled to damages because of the IRS' unlawful actions.

The IRS motion is opposed. For the reasons set forth below, the motion is granted.

## I.

The facts, construed in favor of plaintiff as they must be at this stage of the proceedings, are as follows. From late 1995 until March 31, 1998 S. Hawthorne and her daughter owned a business known as Sylvia's Sweet Treats. When the business closed on March 31, the Sweet Treats account at National City Bank held $7,665.27. Government's Exhibit ("Gov.'s Ex.") 7, attached to Motion for Summary Judgment.[1] S. Hawthorne did not do business as Sylvia's Sweet Treats after March 1998 and has no record of earned income from 1999 through 2003 in excess of $300.00. Response to Requests for Admission 10, 11. As of April 9, 2003 the Sweet Treats account at National City Bank held $40,573.83; as of May 3, 2004 the account held $62,674.36.

On May 3, 2004 S. Hawthorne withdrew the entire amount in the Sweet Treats account from National City Bank and deposited the money in Fifth Third Bank in her own name.[2] Gov. Ex. 1. The National City account was left with $0 balance. S. Hawthorne testified that all of the deposits that went into the Sylvia Sweet Treats account between March 1998 and May 2004 were from money given to her by her husband except for a "minimal" amount from her daughter. There were numerous withdrawals from the Fifth Third account. S. Hawthorne testified that she used the money for gifts for family members and for household goods. On May 22, 2006 the IRS levied on $20,800.05 in the Fifth Third account.

On October 3, 2003 N. Hawthorne withdrew $30,000.00 from an account at Republic Bank. N. Hawthorne testified that the Republic account was not a joint account but a payable on death account that his wife did not know existed. N. Hawthorne cut two separate cashier's checks to S. Hawthorne, each in the amount of $15,000.00; S. Hawthorne deposited the checks in an account in her name at Key-Bank in February 2004. Gov. Ex. 4. N. Hawthorne admitted that when he withdrew the money from Republic Bank and gave it to his wife, he knew of his outstanding tax liability. At no time had he disclosed the outstanding tax liability to his wife. S. Hawthorne testified that she received $30,000.00 from her husband to start the account at KeyBank and that she used the money for household expenses. The IRS levied on $5,031.15 in the Key-Bank account.

In opposition to the summary judgment motion plaintiff states that she did not know of N. Hawthorne's tax liability until May 2004 when she received notice of a lien on their home. N. Hawthorne testified that the money he gave to his wife was for her use, he did not know how she used it, and he did not have access to the accounts in her name. He testified that he did not have a personal account, only a business account. N. Hawthorne acknowledged that he withdrew $30,000 from his

---

1. The exhibits attached to the Government's Motion were used at the deposition of either S. Hawthorne or N. Hawthorne.

2. The Fifth Third records indicate a deposit of $64,674.36, a $2.00 difference between the amount withdrawn and the amount deposited.

Republic Bank account and gave it to S. Hawthorne, who used the money for to pay "expenses for the house, food, clothing, bills." At the time he withdrew the money from Republic Bank and gave it to his wife, N. Hawthorne knew of the tax liability.

■ S. Hawthorne testified that she made deposits into the National City account from the money given to her by her husband. She further testified that the $30,000.00 put in KeyBank was "for things that happen around the house....Like if the plumbing needed to be repaired, lights went out and ... things like that." The "things" purchased for the house benefitted everyone in her family. S. Hawthorne testified that deposits made to the Key-Bank account were from her savings at Fifth Third, those savings being the money from the Sweet Treats account. She deposited money in the Sweet Treats account that was given to her by her husband. S. Hawthorne testified to tithing with money that she considered her own. She did not tithe from the KeyBank account because the money was not hers; it was for paying bills.[3]

The salient facts are as follows: 1) N. Hawthorne had an outstanding tax liability for the tax year 2002; 2) beginning in July 2003 N. Hawthorne deposited money in the Sylvia's Sweet Treats account; 3) from July 1, 2003–May 1, 2004 N. Hawthorne deposited $26,493.22[4] into the Sweet Treats account; 4) S. Hawthorne used the money deposited in the Sweet Treats account by her husband to open an account at Fifth Third Bank; 5) S. Hawthorne considered the money in the Fifth Third

account to be hers to use as she wished; 6) in October 2003 N. Hawthorne withdrew money from Republic Bank and gave it to his wife; 7) in February 2004 S. Hawthorne used the Republic money to open an account at KeyBank; 8) S. Hawthorne did not tithe from the KeyBank money because it was to be used for household expenses; 9) at no time after March 31, 1998 did S. Hawthorne earn more than $300.00 per year; 10) S. Hawthorne admitted that the money deposited in the various accounts was provided by N. Hawthorne; 11) S. Hawthorne used the money in the KeyBank accounts for household purposes that enured to the benefit of her husband, children and herself; and 12) at all relevant times N. Hawthorne knew that he had an outstanding tax liability.

## II.

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. 2548. In this way summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324, 106 S.Ct. 2548.

---

**3.** Plaintiff contends in her opposition brief that she did not review her deposition and to her knowledge neither did her husband. First, the obligation is on the deponent to obtain a copy of the deposition and read it if she/he has not waived. Second, by relying on the deposition testimony, plaintiff waives any argument that her testimony or her husband's testimony is not accurately transcribed.

**4.** The IRS totaled the deposits at $26,491.22. See Reply Memo at 3.

The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505. The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party must oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves...." *Id.* The issue which the court must determine is whether there is evidence on which a jury could reasonably find for the nonmoving party. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989).

■ The IRS agrees that plaintiff had some interest in the funds seized. Because of this stipulation by the IRS, the burden shifts to the Government to "establish, by substantial evidence, a 'nexus' or 'connection' between the taxpayer and the property levied upon." *PBV, Inc. v. Rossotti,* 1999 WL 220123, *1 (6th Cir. April 6, 1999), quoting *Morris v. United States,* 813 F.2d 343, 345 (11th Cir.1987). The ultimate burden of showing that the levy on property was wrongful remains with the plaintiff; if that burden is not met, the standard for waiving sovereign immunity is not satisfied. *McGinness v. United States,* 90 F.3d 143, 145 (6th Cir.1996).

"[I]n application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property." *United States v. National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) (citations omitted). The court must look "to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as property or rights to property within the compass of federal tax lien legislation." *Drye v. United States,* 528 U.S. 49, 58, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999). The "property or rights to property" owned by the taxpayer may extend to property held by a third party who is shown to be a nominee or alter ego of the taxpayer. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350–51, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977).

### III.

■ The money in the KeyBank account was properly levied on for two reasons. First, S. Hawthorne testified that the money was not hers. Instead, the money, deposited in the account by her husband, was to be used for household bills. Second, the IRS created a lien on N. Hawthorne's property as of the date of the tax assessment. *See* 26 U.S.C.A. §§ 6321–6322. At that time, the $30,000 was in the Republic Bank account designated as payable on death to the plaintiff. Pursuant to Ohio Rev.Code § 2131.10, "The interest of the beneficiary [S. Hawthorne] shall be deemed not to vest until the death of the owner." Thus under the law of Ohio S. Hawthorne was not the owner of the money deposited from Republic Bank into KeyBank, and under federal law the IRS had a lien on that $30,000. The Government has carried its burden of showing the nexus between N. Hawthorne's account and the monies in the KeyBank account.

Plaintiff, therefore, has not carried her burden of proof as to the $5,031.15 removed from the KeyBank account.

■ Likewise the money in the Fifth Third account, $20,800.05, was properly levied on. S. Hawthorne made no deposits into that account after 1998. She admitted that all deposits made between July 1, 2003 and April 30, 2004 came from money supplied by N. Hawthorne, thereby establishing the nexus between the funds and the taxpayer. The tax assessment was made on June 23, 2003. Deposits totaled $26,493.22. The $20,800.05 collected by the IRS from the Fifth Third Bank account was less than the amount directly attributable to N. Hawthorne and hence was lawfully levied on. Plaintiff has not carried her burden of proof as to the funds removed from the Fifth Third account.

Plaintiff argues that because the money was placed in her account, state law dictates that her husband no longer had an interest in the property. As the IRS points out, state law cannot trump federal tax law. If it did, delinquent taxpayers would be beyond the reach of the federal government with a stroke of the deposit slip. Such is not legally or logically the case. N. Hawthorne's interest in the funds he deposited did not end at the point of deposit. He obviously earned the funds and benefitted from them; that in itself establishes an interest in them that follows the funds to the KeyBank and Fifth Third accounts.

## IV.

For the above stated reasons, the Motion for Summary Judgment filed by the United States is granted.

IT IS SO ORDERED.