**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Jacob EVSEROFF, Defendant–**
**Appellee,**

**New York State Department of Taxation, Paul Lawrence Evseroff, Kenneth James Evseroff, Barry A. Schneider, Lynn R. Terrelonge, Defendants.**

**No. 06–5391–cv.**

United States Court of Appeals,
Second Circuit.

March 21, 2008.

---

Patricia M. Bowman, Attorney (Michael J. Huangs, Attorney, Benton J. Campbell, United States Attorney for the Eastern District of New York, on the brief), for Eileen J. O'Connor, Assistant Attorney General, Tax Division, U.S. Department of Justice, Washington, DC, for Appellant.

John T. Brennan, Law Offices of John T. Brennan, P.C., Brooklyn, New York, for Appellee.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. REENA RAGGI, Circuit Judges, Hon. CAROL BAGLEY AMON, District Judge.*

### SUMMARY ORDER

The United States appeals from the September 27, 2006 final order of the United States District Court for the Eastern District of New York (Trager, J.) finding, following a bench trial, that the government could not foreclose its liens against property held by a trust created by defendant-appellee Jacob Evseroff. The government seeks to seize this property in order to help satisfy Evseroff's tax liability. We assume the parties' familiarity with the underlying facts and procedural history of the case.

Under federal law, the United States government may impose a lien, deemed to arise at the time of a tax assessment, on any "property" or "rights to property" belonging to a taxpayer until the taxpayer's liability is satisfied or the statute of limitations bars collection. *See Drye v. United States,* 528 U.S. 49, 55–56, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999); *see also* 26 U.S.C. §§ 6321, 6322. The government may seek to enforce such a lien against a taxpayer who fraudulently disposes of his property prior to the existence of the lien under the fraudulent conveyance laws of the state in which the property is located, which in this case is New York. *See Drye,* 528 U.S. at 58, 120 S.Ct. 474; *United States v. McCombs,* 30 F.3d 310, 323 (2d Cir.1994). At issue here is Evseroff's transfer of his Brooklyn residence and $220,000 to a trust he created after receiving a notice of deficiency from the IRS, which stated that he owed more than $700,000 in tax liability. Evseroff's two sons are the named beneficiaries of the trust and family friends are the named trustees. The district court found that the government could not foreclose its liens against the property, concluding that Evseroff's transfers were neither actually or constructively fraudulent under New York Debtor and Creditor Law §§ 273, 276 because the government failed

---

* The Honorable Carol Bagley Amon of the United States District Court for the Eastern District of New York, sitting by designation.

to establish that Evseroff was rendered insolvent as a result of his transfers.

The government challenges only the actual fraud conclusion, asserting that the district court erroneously held as a threshold matter that a debtor must be insolvent at the time of a transfer before the conveyance may be fraudulent under § 276. Unlike constructive fraud under § 273, "[a] conveyance is fraudulent [under § 276] when the grantor, even though solvent, is motivated by an intent to hinder, delay or defraud his creditors." *Pattison v. Pattison*, 301 N.Y. 65, 74, 92 N.E.2d 890 (1950); *see also* N.Y. Debtor & Creditor Law § 276 ("Every conveyance made ... with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."). While a court may consider the solvency of the debtor in its analysis of whether there was actual intent to hinder, delay, or defraud creditors, the district court below committed legal error by elevating this factor to a threshold requirement.[1] *See In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir.2005) (explaining that because proving actual intent to hinder, delay, or defraud creditors is difficult, a creditor may rely on "badges of fraud" to support his case, "i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent"); *see also In re Kaiser*, 722 F.2d 1574, 1578 (2d Cir.1983) (explaining that, among other things, badges of fraud may include: "(1) the lack or inadequacy of consideration; (2) the

family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry"). Because the district court limited its inquiry to insolvency, we remand to the district court to make a full inquiry under § 276 in the first instance. The district court should examine both whether Evseroff intended to defraud the government and also whether he intended to hinder or delay, as either motive is sufficient under § 276.

In rejecting the government's claim that Evseroff was the nominee or alter ego of the trust, the district court relied, at least in part, on its finding as to Evseroff's estate planning motive. Under New York law, however, the critical issue in resolving a nominee or alter ego claim is not motive, but control, and whether the defendant used this control to commit a fraud or other wrong resulting in an unjust loss or injury to the plaintiff. *See, e.g., In re Vebeliunas*, 332 F.3d 85, 91–92 (2d Cir. 2003) (observing that the plaintiff must establish the defendant's exercise of control over the entity at issue, such that the entity has become a mere instrumentality of the defendant, and that the defendant used this control to commit fraud or other

---

1. In addition, because the issue is intent, the more relevant inquiry is not whether the debtor was actually insolvent at the time of the transfer, but rather whether the debtor believed that the transfer would make him insolvent presently or in the future. For example, it is relevant if Evseroff believed at the time of his transfers that his Florida home could not

be foreclosed because he may have believed that these transfers would affect his solvency. Likewise, it is relevant if Evseroff had no intention of paying his tax liability and thus knew that his liability would continue to grow through interest and that his assets, without the transferred property, would not be able to satisfy his debt in the future.

wrong resulting in unjust loss or injury to the plaintiff). The record in this case reveals several indicia of Evseroff's control over the trust. To start, although Evseroff transferred his home to the trust (for no consideration), he appears to have continued to reside in and enjoy the property much as he had before. While Evseroff presumably could not sell the home without the cooperation of the trustees, that fact does not, by itself, defeat the government's nominee and alter ego claims. *Cf. LiButti v. United States,* 107 F.3d 110, 119 (2d Cir.1997) (noting that in applying alter ego analysis in the tax context, courts "must avoid an over-rigid preoccupation with questions of structure" and "apply the preexisting and overarching principle that liability is imposed to reach an equitable result" (internal citations and quotation marks omitted)); *Horton Dairy, Inc. v. United States,* 986 F.2d 286, 291 (8th Cir. 1993) (concluding that the IRS was entitled to levy upon property that "functionally belonged to" the taxpayers but "nominally was held by the alter ego"). The record reveals that the trustees selected by Evseroff played no role in administering the trust. Indeed, they appeared to think they had no such responsibilities until Evseroff's death. Meanwhile, Evseroff himself paid trust expenses, such as tax obligations, out of his law firm account. While the district court identified Evseroff's payments of various expenses associated with his transferred home as the equivalent of "rent" paid to the trust, this conclusion lacks support in trust accounts. Notably, no trust records identify the payment of these expenses as income.

While this record can reasonably be viewed to provide strong evidence of Evseroff's control over the trust, we are mindful that the question of control is one of fact necessarily determined by reference to the totality of the evidence. *See United States v. Funds Held in the Name or for the Benefit of Wetterer,* 210 F.3d 96, 106 (2d Cir.2000). As such, it is best resolved in the first instance by the district court. If the district court concludes that Evseroff controlled the trust, the court must then decide whether Evseroff used this control to commit fraud or other wrongful conduct, such as whether he ever used the trust for his benefit rather than the benefit of his two sons. For example, the district court may wish to examine how any payments Evseroff made in connection with the house compared to the fair market value of the premises. It might also consider how such payments were carried on trust accounts and treated by Evseroff, his law firm, and the trust on their respective tax returns. Evseroff's motive in creating the trust is not dispositive on these relevant questions. Accordingly, we remand to the district court to reconsider the government's nominee and alter ego theories.

For the foregoing reasons, the final order of the district court is VACATED and the matter is REMANDED for proceedings consistent with this opinion.