**NOT RECOMMENDED FOR PUBLICATION**
File Name: 16a0637n.06

No. 15-3388

**FILED**
Nov 30, 2016
DEBORAH S. HUNT, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| PAUL DAVID MUSGRAVE, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE:** McKEAGUE, KETHLEDGE, and STRANCH, Circuit Judges

**JANE B. STRANCH, Circuit Judge.** This appeal concerns which assets may be included in an order governing payment of a criminal defendant's restitution obligations under the Mandatory Victim Restitution Act (MVRA). After a jury found Paul Musgrave guilty of various frauds, the district court ordered him to pay restitution and a fine totaling nearly $2 million. At issue is whether Musgrave has the type of interest in certain assets held in Mrs. Musgrave's name that he may be ordered to make payments from those assets. On appeal from the order directing restitution payments, the government and Musgrave agree on most of the applicable legal standards, and the government recommends remanding for an evidentiary hearing. We REMAND with instructions to the district court to hold an evidentiary hearing to determine which assets the United States can reach to enforce the order of restitution.

### I.    BACKGROUND

A jury convicted Musgrave on four counts relating to a scheme to fraudulently obtain a business loan of over $1.7 million.  After an initial sentence was vacated, *United States v. Musgrave*, 761 F.3d 602, 608–09 (6th Cir. 2014), the district court resentenced Musgrave, imposing $1,715,650 in restitution and a $250,000 fine.  We affirmed the second sentence. *United States v. Musgrave*, 647 F. App'x 529, 530 (6th Cir. 2016).

The district court imposed a payment schedule under which Musgrave would make monthly payments of $2,000 as well as quarterly payments of $25,250.  Musgrave was also ordered to submit financial disclosures and suggest a plan for meeting the court's proposed payment schedule.  Finding Musgrave's initial financial disclosure forms unsatisfactory, the district court ordered Musgrave to supplement his disclosures, specifically noting that the forms' instructions state that "all assets of Defendant's spouse and dependents must be included if Defendant 'enjoys the benefits of or makes occasional contributions towards' them."

Musgrave's second disclosure forms indicated that his gross income is $6,000 per month and that he has no savings in his own name.  The only other significant assets reported are partial ownership stakes in two businesses, whose value is unknown because the businesses are closely held between Musgrave and his stepfather.  Musgrave also reported that he enjoys the benefits of his wife's income and the half-million dollar home they both live in, though he stated that his wife solely owns the home.  Finally, Musgrave reported that his wife solely owns and controls retirement accounts, an investment account created with money she inherited, a rental condominium, and automobiles.  According to the district court, Musgrave and his wife together have a monthly income of $12,215.71, and his wife has at least $1.7 million in assets, along with $385,351 in liabilities.

Musgrave proposed a payment plan in which he and his stepfather would sell their two businesses, and he would borrow the necessary funds to make his quarterly payments of $25,250 from his wife or stepfather, pledging the proceeds of the sale of the businesses as security for the loan. The first $25,250 in proceeds from any such sale would be used to repay the lender. The district court rejected Musgrave's proposal. It found that Musgrave effectively shared ownership of his wife's income and assets, including the home, cars, personal property, rental condo, and retirement and investment accounts that technically are in her name only. The district court described the apparent formal division of ownership as "largely illusory." For this reason, the district court found that Musgrave had the means to make his payments without borrowing money, and ordered him to make his payments as scheduled from assets held in his own name, his wife's name, or both their names.

Musgrave timely appealed this order, and requested a stay of his quarterly payments pending appeal. The district court granted the motion to stay and ordered Musgrave to post bonds in the amount of each quarterly payment by each due date and to continue making his scheduled monthly payments of $2,000.

## II.    ANALYSIS

### A.    Legal Standards

The Mandatory Victim Restitution Act (MVRA) mandates restitution for offenses "committed by fraud or deceit," such as Musgrave's. 18 U.S.C. § 3663A(c)(1)(A)(ii). A restitution order under the MVRA "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c); *see also* 26 U.S.C. § 6321 (Internal Revenue Code section stating that nonpayment of any tax demand "shall be a

lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person"). To determine the reach of the MVRA, therefore, we look to how courts have applied the federal tax lien statute.

The Supreme Court has instructed that, because property rights depend on state law, courts apply the federal tax lien statute in two steps: "We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye v. United States*, 528 U.S. 49, 58 (1999); *cf. Morgan v. Comm'r,* 309 U.S. 78, 80 (1940) ("State law creates legal interests and rights. The federal revenue acts designate which interests or rights, so created, shall be taxed.").

The first step of the *Drye* analysis asks how much effective control over the property in question state law provides to the person owing payment. "[I]n determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' '[t]he important consideration is the breadth of the control the [taxpayer] could exercise over the property.'" *Drye*, 528 U.S. at 61 (quoting *Morgan*, 309 U.S. at 83). This state-law analysis is functional, not formalistic; it considers "the realities" of the defendant's interest and "the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them." *United States v. Craft*, 535 U.S. 274, 279 (2002).

In *Craft*, the Supreme Court considered whether a federal tax lien could attach to a spouse's interest in a tenancy by the entirety, Michigan's form of joint property ownership between spouses. *Id.* at 283. To determine the taxpayer's effective control of the property under state law, the Court identified which specific rights Michigan law granted to the taxpayer with

respect to the property. The Court identified these rights with considerable granularity, finding

that the taxpayer had:

> [T]he right to use the property, the right to exclude third parties from it, the right to a share of income produced from it, the right of survivorship, the right to become a tenant in common with equal shares upon divorce, the right to sell the property with the [spouse]'s consent and to receive half the proceeds from such a sale, the right to place an encumbrance on the property with the [spouse]'s consent, and the right to block [his spouse] from selling or encumbering the property unilaterally.

*Id.* at 282.

After identifying the person's state-law property rights, courts must next determine

whether those rights qualify as "property" or "rights to property" under the federal tax lien

statute (and thus under the MVRA). This inquiry is governed by federal law, which may

override state-law exemptions or legal fictions and is not bound by determinations of the state

courts on similar questions. *Id.* at 288–89. The language of the federal tax lien statute "is broad

and reveals on its face that Congress meant to reach every interest in property that a taxpayer

might have." *Id.* at 283 (quoting *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719–

20 (1985)).

The Supreme Court's decisions provide guidance as to which state-law rights qualify as

"property" or "rights to property" under the broad language of the federal tax lien statute. *Craft*

suggested that the rights to use property, receive income produced by it, and exclude others from

it may be sufficient by themselves to qualify, even without the right of unilateral alienation. *Id.*

at 283–84. Combined with the right to alienate with a spouse's consent and the right of

survivorship, *Craft* held that the rights granted by Michigan's tenancy by the entirety did qualify,

permitting federal tax liens to reach property that Michigan law did not permit state creditors to

reach. *Id.* at 283–85, 288. *Drye* held that an heir's interest in his mother's estate qualified for

federal attachment despite his disclaimer of interest permitted under Arkansas law. *Drye*, 528 U.S. at 60. Similarly, a state law permitting retroactive renunciation of a marital interest does not foreclose federal tax liability. *Id.* at 59. The Court has also held that a right to withdraw all the proceeds from a joint bank account and a right to compel an insurer to pay the cash value of a life insurance policy both qualified for federal tax liens, even though state law shielded those rights from other creditors' liens. *Id.* at 58–59. By contrast, a federal tax lien cannot attach to proceeds unavailable to a taxpayer in his lifetime. *Id.* These federal-law precedents govern the reach of the MVRA.

### B.      Application To Musgrave

The record on appeal is insufficient to determine whether the government can reach assets held in the name of Musgrave's wife. While the district court was correct to look to the level of effective control Musgrave exercises over the contested assets, it did not identify which specific elements of Musgrave's financial disclosures provided the factual basis for its finding that Musgrave exercises effective control. Further development of the record by the district court is required to properly undertake the *Drye* analysis. As an initial matter, neither the parties nor the district court discusses which state law applies to determine the rights Musgrave has in any of the assets in his wife's name. Musgrave cites the North Carolina state constitution, which provides that:

> The real and personal property of any female in this State acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations, or engagements of her husband, and may be devised and bequeathed and conveyed by her, subject to such regulations and limitations as the General Assembly may prescribe.

N.C. Const. art. X, § 4.  We leave it to the district court to determine in the first instance whether the law of North Carolina or some other state applies to this question, and then to conduct a step-by-step *Drye* analysis of Musgrave's effective control over assets held in his wife's name.

### III.      CONCLUSION

For the foregoing reasons, we REMAND to the district court for an evidentiary hearing to determine which assets the United States can reach to enforce the order of restitution.  As *Drye* and *Craft* instruct, the district court must first determine which functional rights Musgrave has in the various assets under applicable state law, and second determine whether Musgrave's rights in particular assets qualify as "property" or "rights to property" under federal tax lien/restitution law.  Following the evidentiary hearing and application of the legal standards discussed above, the district court may amend the appealed order as it deems appropriate.