T.C. Memo. 2003-328

UNITED STATES TAX COURT

JERRY D. CRINER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7126-02L.              Filed November 25, 2003.

Jerry D. Criner, pro se.

<u>Bruce K. Meneely</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  On March 28, 2002, respondent mailed to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320[1] and/or 6330 (notice of

_____

[1]Section references are to the Internal Revenue Code of 1986, as amended and in effect at the time the petition was filed.

determination) for unpaid Federal income tax liabilities of petitioner for 1990 through 1993. In response to that notice and pursuant to sections 6320 and 6330(d), petitioner timely petitioned this Court to review the determination to proceed with collection by filing a nominee Notice of Federal Tax Lien (NFTL).

The issue for decision is whether the Appeals Office abused its discretion in upholding respondent's filing of a nominee NFTL in this case.

## FINDINGS OF FACT

### Background

Petitioner resided in Claremore, Oklahoma, when he filed his petition in this case.

From 1975 to 1996, approximately, excluding the periods of time that he was incarcerated, petitioner derived at least some portion of his income from cheating at gambling. By his own estimate, since 1975, petitioner has earned substantial income by cheating at gambling.

At various times during the 1980s through the mid-1990s, petitioner was prosecuted in Nevada, New Jersey, and Oklahoma for money laundering, structuring monetary transactions, felony theft by deception, possession of slot machine cheating devices, fraud, and burglary, and he served time in prison. In connection with the Nevada prosecution, petitioner was arrested in Tulsa, Oklahoma, on May 13, 1987. Petitioner had at least $30,000 in

cash in his possession at the time of his May 13, 1987, arrest.

Sometime during 1984 or 1985, petitioner established the Wesley Brown Society, allegedly an Oklahoma corporation. Petitioner was the president and sole owner of the Wesley Brown Society. Petitioner bought and sold real estate through the Wesley Brown Society, purchasing at least four properties and recording the title to those properties in the name of the Wesley Brown Society. Petitioner also purchased a car, registering it in the name of the Wesley Brown Society as lessee. The Wesley Brown Society did not file Federal or State tax returns.

Petitioner does not have a checking account and does not maintain any tax or financial records. Petitioner pays his living expenses with money orders or out of accounts titled in the names of family members.

The Claremore Property

The property where petitioner and his family reside is located at 20154 Carefree Valley Drive, Claremore, Oklahoma 74017-9101[2] (the Claremore property). The Claremore property consists of a large, two-story house on 8.5 acres, located about 15 minutes by car outside the city of Claremore, Oklahoma. The

---

[2]The Claremore property address is also shown as Route 2, Box 2-3, Claremore, Oklahoma 74017-9101. The legal description of the property is shown on the amended Notice of Federal Tax Lien as "Lot 3 in Block 2 of Amended Plat of Carefree Valley, an addition in Section 8, Township 21, North Range 17 East of the I.B.&M., Rogers County, Oklahoma, according to the recorded Plat thereof."

Claremore property was purchased on April 3, 1987, from James T. and Virginia L. Arnold for $135,000 and was titled in the name of Alice Criner, petitioner's mother.  No mortgage was recorded against the property in connection with the 1987 purchase.  The record in this case contains no evidence of the source of the funds used to purchase the Claremore property in 1987.[3]

When the Claremore property was purchased in 1987, Alice Criner was in her mid-sixties.  She had worked for St. John's Hospital for approximately 30 years.  When Alice Criner retired sometime in the early 1980s, she was a cafeteria supervisor.  In 1987, Alice Criner's income consisted of retirement benefits from St. John's Hospital and possibly Social Security benefits.

Alice Criner lived in the Claremore property for an unknown length of time between April 1987 and 1989.  She never owned a car and did not know how to drive.  For the last few years of her life, Alice Criner suffered from advanced-stage Parkinson's disease.  Sometime between April 1987 and her death in 1989, Alice Criner became too ill to live at the Claremore property and was moved into a care facility in Broken Arrow, Oklahoma.  Alice Criner died intestate on August 21, 1989.  Each of Alice Criner's six children received approximately $1,400 in death benefits from a life insurance policy as a result of her death.

---

[3]Alice Criner's daughter, Jeannie McLelland, testified that she did not know where her mother would have gotten the funds to purchase the Claremore property in 1987.

Petitioner lived at the Claremore property "many times" before taking up permanent residence there in 1995. For example, petitioner, his wife, and their two children resided at the Claremore property from January 1988 through April 23, 1990, and again from April 1, 1992, through June 13, 1993. Petitioner has taken care of the Claremore property since at least 1989 and has improved the property from time to time. For example, he constructed a pond and installed a spa on the Claremore property.

Petitioner also has maintained, and continues to maintain, utility accounts with respect to the Claremore property. For example, in order for a property owner in Rogers County, Oklahoma, to obtain water rights, he or she was required to submit proof of his or her property ownership to the Rural Water District No. 7 in Rogers County, Oklahoma. On May 1, 1987, Rural Water District No. 7 in Rogers County, Oklahoma, issued a benefit unit certificate for water rights to petitioner for the Claremore property. On May 1, 1987, petitioner became the tap owner with respect to the Claremore property. Petitioner also has an account with Verdigris Valley Electric Cooperative with respect to the Claremore property.[4]

On April 27, 1993, petitioner purchased a cashier's check in the amount of $6,292.91, payable to the Rogers County Treasurer

---

[4]The Claremore property account with Verdigris Valley Electric Cooperative has never been listed under the name of Alice Criner.

for ad valorem property taxes on the Claremore property for 1989, 1990, 1991, and 1992. Petitioner also paid the 1993 ad valorem property taxes on the Claremore property with a check drawn on the account of "Cass Criner, a minor, Jerry Criner, custodian, UTMA". On November 29, 2000, petitioner's 18-year-old son, Candon Criner, purchased a cashier's check in the amount of $1,233.86, payable to the Rogers County Treasurer. At that time, Candon Criner probably was not living at the Claremore property and would not have had the money to buy the cashier's check without petitioner or one of petitioner's brothers or sisters giving him the funds.

Petitioner's Tax Liabilities

Petitioner did not file Forms 1040, U.S. Individual Income Tax Return, for 1990 through 1993. Petitioner signed a Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, on July 31, 1996, consenting to the assessment of deficiencies in income tax and additions to tax under section 6651(a)(1) for 1990 through 1993. Respondent assessed the deficiencies in income tax and the additions to tax under section 6651(a)(1) for 1990 through 1993 on September 9, 1996.

On December 4, 2001, petitioner's collection matter was assigned to Revenue Officer Dale Baustert. Mr. Baustert's review of the file revealed that collection actions had been initiated

against condominiums allegedly owned by petitioner in New Jersey and were still pending and that a request for a nominee NFTL with respect to the Claremore property had not been completed.

On December 11, 2001, Mr. Baustert submitted a memorandum requesting authorization to file a nominee NFTL against the Claremore property to the Office of District Counsel in Oklahoma City, Oklahoma (Counsel). The memorandum request was sent through Dale Spannagel, group manager. In the memorandum, Mr. Baustert outlined the facts that formed the basis for his belief that petitioner was the equitable owner of the Claremore property: (1) No mortgage was recorded when the Claremore property was ostensibly purchased by Alice Criner, indicating a cash purchase; (2) petitioner had a long history of placing real and personal property in nominee names of his family members and the Wesley Brown Society; (3) on April 26, 1990, petitioner's ex-wife recorded a quitclaim deed divesting herself of any interest that she had in the Claremore property; (4) Rogers County Treasurer's records indicate that petitioner, his wife, and their children have paid the ad valorem property taxes on the Claremore property; and (5) petitioner claimed to have "an arrangement" with his siblings to watch after the home, but he did not produce any affidavits from them when asked to do so by the revenue officer. The memorandum also noted that the Claremore property was listed for sale with Peck Realty for an asking price of

$179,000.

On January 15, 2002, Counsel issued an advisory opinion to Revenue Officer Baustert approving his request to file a nominee NFTL against the Claremore property.  The January 15, 2002, opinion listed the following facts in support of its conclusion authorizing the filing of a nominee NFTL:  (1) The Claremore property was purchased free and clear at a time when petitioner had considerable amounts of cash that he had earned illegally; (2) title to the Claremore property is in the name of a close relative, i.e., petitioner's mother; (3) petitioner had admitted to a revenue officer that he owns a partial interest in the Claremore property; (4) petitioner had paid the property taxes on the residence and had lived in the residence for many years; (5) petitioner has a history of placing property that he owns in the names of other persons or entities; (6) petitioner failed to produce affidavits from his brothers and sisters confirming under oath that they have an ownership interest in the Claremore property; (7) petitioner's ex-wife filed a quitclaim deed releasing any ownership interest that she held in the property in April 1990; and (8) Counsel had already authorized on similar facts the filing of a nominee NFTL against certain New Jersey condominiums titled in the name of petitioner's wife.

On January 17, 2002, Mr. Baustert filed a nominee NFTL against the Claremore property with the County Clerk, Rogers

County, Claremore, Oklahoma.  On January 31, 2002, Mr. Baustert filed a corrected NFTL against the Claremore property with the County Clerk, Rogers County, Claremore, Oklahoma.  Both the original and the corrected NFTL identified the "Claremore property" and listed the taxpayer as "Alice Criner as the Nominee of Jerry D. Criner".

On January 17, 2002, respondent mailed to petitioner a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320" covering 1990 through 1993.  On January 30, 2002, petitioner timely submitted Form 12153, Request for a Collection Due Process Hearing, requesting a hearing under section 6320 (the hearing).  In his request for a hearing, petitioner stated that he disagreed with the nominee NFTL because the Claremore property belonged to his deceased mother.

In a letter to petitioner dated February 20, 2002, Settlement Officer Scott Penny (Mr. Penny or hearing officer) acknowledged receipt of petitioner's hearing request and asked petitioner to provide documentation to substantiate his claim that the Claremore property listed in the nominee NFTL belonged to his deceased mother.  Mr. Penny specifically requested documentation showing Alice Criner's ability to purchase the property for $135,000 in April 1987, probate records showing distribution of Alice Criner's estate, and any other documentation to support petitioner's claim.  In the February 20,

2002, letter, Mr. Penny noted that, based on his review of petitioner's file, it appeared that all legal and administrative procedures were met by respondent in filing the NFTL against Alice Criner as nominee of petitioner.

On February 25, 2002, petitioner sent a letter to Mr. Penny expressing concern that Mr. Penny had already come to a conclusion regarding the validity of the nominee NFTL without "seeing, hearing or reviewing" petitioner's proof that he did not own the Claremore property. Petitioner also expressed doubt that a person employed by the Internal Revenue Service (IRS) or any other branch of the Federal Government could review the evidence and reach a fair and impartial ruling. Petitioner also advised Mr. Penny that he wanted to record the hearing, and he inquired as to whether petitioner and his sister and up to 30 witnesses would be reimbursed for the expense of attending the hearing. Petitioner enclosed with the letter Form 2848, Power of Attorney and Declaration of Representative, designating his sister, Jeannie McLelland, as his representative.

On March 7, 2002, Mr. Penny sent a letter to petitioner informing him that the hearing had been scheduled for March 22, 2002, and that, in accordance with petitioner's request, the hearing would be recorded but at no cost to the Government. The letter also stated that, because the hearing was petitioner's hearing, witnesses would not be allowed to speak during the

hearing.[5]

On March 22, 2002, petitioner and his sister, Jeannie McLelland, attended the hearing.  Among other things, petitioner and Ms. McLelland placed on the record of the hearing a statement that they had intended to call approximately 12 witnesses but that they were told by Mr. Penny before the hearing that their witnesses could not appear and testify.  Mr. Penny acknowledged their statement and did not deny its accuracy, but he also reminded petitioner of his request for testimony in the form of affidavits under oath.  During the hearing, Mr. Penny also explained that he had reviewed the information in petitioner's case file and had verified that all applicable laws and administrative procedures governing the filing of a nominee NFTL had been met.

During the hearing, petitioner argued that his deceased

---

[5]Petitioner did not raise any issue regarding Mr. Penny's apparent prohibition of live testimony from witnesses at the hearing or at the trial before this Court.  Petitioner did not argue in his trial memorandum or posttrial brief that the prohibition regarding live testimony deprived him of a fair hearing.  Moreover, we note that, although Mr. Penny specifically requested, before the hearing, that petitioner bring to the hearing affidavits under oath from each of his siblings to document his claim that they own interests in the Claremore property, petitioner failed to do so.  We conclude on these facts that the prohibition with regard to live testimony at the hearing did not deprive petitioner of the opportunity to present relevant testimony through affidavits under oath.  Petitioner could have made a factual record in support of his position by submitting affidavits from his witnesses at the hearing, but petitioner failed to do so.

mother owned the Claremore property and that, therefore, the nominee NFTL was unlawful. Petitioner and Jeannie McLelland explained that their mother had died without a will, that she had left the property to her six children, that her estate had not gone through probate, and that the property would remain in her name forever. Petitioner conceded, however, that he owned a one-sixth interest in the Claremore property by virtue of his mother's death. At the hearing, Mr. Penny again asked for documentation showing the ability of petitioner's mother to purchase the Claremore property in 1987 without the encumbrance of a mortgage, but petitioner did not produce the requested documentation at the hearing or at any time after the hearing.

Petitioner also argued at the hearing that the assessments against him for 1990 through 1993 were invalid because he had rescinded his signature on the Form 870. Petitioner did not raise any spousal defenses or propose any specific collection alternatives during the hearing.[6]

On March 28, 2002, respondent's Appeals Office issued a notice of determination in which it determined the following:

1.   All legal and administrative procedures for filing a nominee NFTL were met.

2.   The Appeals officer had had no prior involvement with

---

[6]Petitioner had previously filed two offers in compromise which respondent either rejected or requested be withdrawn.

respect to petitioner's 1990 through 1993 income tax liabilities.

3. Petitioner did not raise any spousal defenses during the hearing, and, consequently, none were considered.

4. Petitioner had signed a Form 870 agreeing to the assessment of the 1990 through 1993 income tax deficiencies and waiving his right to judicial review, thereby precluding any challenge to the amount of the underlying liabilities.[7]

5. All legal and administrative requirements for the filing of a nominee NFTL, including the requirement to request and obtain Counsel's approval, had been satisfied. Counsel's approval of the NFTL was based on documentation sufficient to show that petitioner was the sole owner of the Claremore property. Moreover, petitioner had admitted during the hearing that he owned an interest in the Claremore property.

6. No collection alternatives were discussed because an agreement could not be reached regarding the extent of petitioner's ownership interest in the Claremore property.

7. The filing of the nominee NFTL balanced the need for efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary and was appropriate under the circumstances.

---

[7]Petitioner did not contest this part of the Appeals Office's determination in his petition, at trial, or in his posttrial brief. Consequently, we do not address it in this opinion.

In response to the notice of determination, petitioner mailed a letter dated March 30, 2002, to this Court that this Court treated as a timely, but imperfect, petition appealing respondent's determination for 1990 through 1993. By order dated April 5, 2002, this Court directed petitioner to file a proper amended petition. On August 1, 2002, petitioner filed an amended petition in which he alleged as follows:

(a) The Notice of Determination is invalid, as the Appeals Team Manager whose name appears on the Notice of Determination did not make a determination that lien action against Petitioner should be sustained for any of the years at issue.

(b) The Notice of Federal Tax Lien which forms the basis of this case is invalid, as the Revenue Officer whose name appears on the Notice of Federal Tax Lien was not authorized to file nominee Notices of Federal Tax Lien without the written approval of his direct supervisor issued pursuant to §3421 of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA '98).

(c) The Appeals Officer who conducted Petitioner's Collection Due Process (CDP) hearing had prior involvement in Petitioner's case, prior to the hearing taking place, with respect to the tax for the tax periods covered by the hearing, in violation of I.R.C. §6320(b)(3), Treasury Regulation §301.6320-1(d)(1), and Treasury Regulation §301.6320-1(e)(1).

(d) The Appeals Officer who conducted Petitioner's CDP hearing determined, before the said hearing was concluded, that lien action against Petitioner was appropriate, in violation of I.R.C. §6330(c)(3)(A), I.R.C. §6330(c)(3)(B), and I.R.C. §6330(c)(3)(C) (each by and through I.R.C. §6320(e)).

(e) Respondent erred by determining it was appropriate to cause the filing, against certain real property, of a nominee Notice of Federal Tax Lien with respect to Petitioner. Respondent's determination was

arbitrary.

(f) Respondent erred by determining that all applicable laws and administrative procedures to support his nominee lien action against Petitioner had been met, although he neither considered the applicability of the laws of the State of Oklahoma, nor considered Petitioner's status under those laws, with respect to the real property that is the subject of his nominee Notice of Federal Tax Lien.

(g) Respondent erred by determining that Petitioner had not proposed reasonable collection alternatives to Respondent's lien action.

(h) Respondent erred by not considering, exploring, or eliciting from Petitioner, what collection actions less intrusive than lien action would balance the government's need to efficiently collect the tax liabilities at issue with Petitioner's legitimate concern that the collection action be made by the method least intrusive to him.

(i) With respect to the tax liability for the year 1993, Respondent abused his discretion by determining it was appropriate to cause the filing, against certain real property, of a nominee Notice of Federal Tax Lien with respect to Petitioner, when he had already caused the filing of a Notice of Federal Tax Lien against Petitioner for the year 1993.

(j) Respondent abused his discretion by asserting against Petitioner a nominee theory with respect to specific real property, the existence and ownership of which was known to Respondent at least four years prior to the filing of his nominee Notice of Federal Tax Lien, yet which specific real property was never deemed by him to be the property of Petitioner.

The errors identified in paragraphs (a), (b), (i), and (j) were not raised by petitioner at the hearing and were not considered by the Appeals Office in its notice of determination.

OPINION

All property and rights to property of a taxpayer become subject to a lien in favor of the United States on the date a tax liability is assessed against a taxpayer, if the taxpayer fails to pay the tax liability after notice and demand for payment. Secs. 6321 and 6322. Until an NFTL is filed, however, the lien is without validity and priority against certain persons such as judgment lien creditors of the taxpayer. Sec. 6323(a).

After the Commissioner files the NFTL, the Commissioner must provide the taxpayer with written notice of the filing, informing the taxpayer of his right to request an administrative hearing on the matter. Sec. 6320(a)(1), (3)(B). If the taxpayer makes a timely request for an administrative hearing, section 6320(c) requires that the hearing be conducted pursuant to section 6330(c), (d), and (e). Section 6330(c)(2) provides that a person may raise any relevant issue relating to the disputed collection action and may contest the existence or amount of the underlying tax liability if the person did not receive a notice of deficiency or did not otherwise have the opportunity to dispute the underlying tax liability. See also Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 180-181 (2000).

Following the hearing, the hearing officer is required to issue a notice of determination regarding the disputed collection

action. In the determination, the hearing officer must confirm that he or she took into consideration the verification presented under section 6330(c)(1). Sec. 6330(c)(3)(A); sec. 301.6320-1(e), Proced. & Admin. Regs. In addition, the determination must take into consideration any issues appropriately raised by the taxpayer, offers by the taxpayer for collection alternatives, and whether the disputed collection action represents a balance between the Government's need for efficient collection of taxes and the taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c). If the taxpayer disagrees with the hearing officer's determination, the taxpayer has the right to seek judicial review of the determination by appealing to this Court or, if this Court lacks jurisdiction over the underlying tax liability, to a Federal District Court. Sec. 6330(d).

If the taxpayer files a timely petition for judicial review, the applicable standard of review depends upon whether the underlying tax liability is at issue. Where the underlying tax liability is not at issue, the Court will review the Appeals officer's determination for abuse of discretion. Sego v. Commissioner, supra at 610.

In his amended petition, petitioner enumerates a plethora of "errors" allegedly committed by the Appeals Office in making its determination upholding the nominee lien filed against the

Claremore property.  Several of the errors involve arguments that were not raised at the hearing or considered by the Appeals Office in its notice of determination.  We shall divide petitioner's alleged errors into two categories--those that were raised at the hearing and addressed in the notice of determination and those that were not--and evaluate them accordingly.  Because petitioner concedes that he is not contesting the underlying tax liabilities, we shall review the Appeals Office's determination for abuse of discretion.  Id.

A.  Errors Raised at the Hearing

The errors listed in the amended petition that were raised by petitioner, either explicitly and implicitly, at the hearing and/or addressed in the notice of determination are as follows:

1.  Respondent erred in determining that the hearing officer had no prior involvement with respect to the unpaid tax at issue in this proceeding.

2.  Respondent erred in determining that the requirements of applicable laws and administrative procedures relative to the issuance and filing of the nominee NFTL had been satisfied and that the nominee NFTL was valid.

3.  Respondent erred by not considering reasonable collection alternatives to respondent's nominee NFTL and by concluding that the filing of the nominee NFTL balanced respondent's need for efficient collection of taxes with

petitioner's concern that the collection action be no more intrusive than necessary.

We consider each of the listed arguments below.

A.1.  Impartial Officer

Section 6320(b)(3) provides, in pertinent part, that any hearing with respect to a lien under section 6320 "shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax".  Petitioner alleges two errors in respondent's determination regarding the impartiality of the hearing officer.  The first is that the hearing officer "had prior involvement * * * with respect to the tax for the tax periods covered by the hearing", contrary to section 6320(b)(3), and the second is that the hearing officer had "determined, before the said hearing was concluded, that lien action against Petitioner was appropriate".

Section 6320 requires that any hearing conducted under that section must be conducted by an impartial officer.  Section 6320(b)(3), however, defines an impartial officer as "an officer or employee who has had no prior involvement with respect to the unpaid tax specified in section (a)(3)(A) before the first hearing under this section or section 6330."  The impartiality requirement ensures that a hearing officer has had no prior involvement in the determination and assessment of the underlying tax liability that is the subject of the hearing.

The record confirms that the hearing officer in this case did not have any prior involvement with respect to the underlying tax liability before the hearing. Consequently, respondent did not abuse his discretion in determining that the section 6320(b)(3) requirement was met.

We also reject petitioner's assignment of error alleging that the hearing officer had prejudged the issues raised by petitioner. Section 6320(b)(3) limits the definition of "impartial officer" as noted above, and that definition does not address, and arguably does not permit, a challenge to the objectivity of the hearing officer who presides over a hearing under sections 6320 and 6330. However, we shall assume without deciding, for purposes of this analysis, that sections 6320 and 6330 permit a challenge in appropriate cases to a demonstrably biased hearing officer. See secs. 6320(c), 6330(c)(2)(A) (A person may raise at the hearing any relevant issue relating to the proposed collection action including the enumerated issues).

We have reviewed the transcript of the hearing, and we can see no evidence of prejudgment or bias. The hearing officer made an effort to explain to petitioner that petitioner must demonstrate that the filing of the nominee NFTL was not valid. It appears that petitioner's allegation of bias was directed at the hearing officer's refusal to invalidate the nominee NFTL based on evidence that the Claremore property was titled in Alice

Criner's name.  Petitioner's allegation of bias is not supported by the record in this case.

A.2.  <u>Validity of the Nominee NFTL</u>

Section 6321 provides:

> SEC. 6321.  If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

The language of section 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have."  <u>United States v. Natl. Bank of Commerce</u>, 472 U.S. 713, 719-720 (1985); see also <u>Drye v. United States</u>, 528 U.S. 49, 56 (1999).  Among the property interests reached by section 6321 is an equitable interest owned by or for the benefit of a taxpayer in property titled in the name of a nominee.  <u>G.M. Leasing Corp. v. United States</u>, 429 U.S. 338, 350-351 (1977); <u>United States v. Miller Bros. Constr. Co.</u>, 505 F.2d 1031 (10th Cir. 1974).  Section 6321 authorizes the Government, among other things, to file a nominee NFTL against property of a taxpayer in the hands of an alter ego or nominee.  <u>G.M. Leasing Corp. v. United States</u>, <u>supra</u> at 351.

Petitioner makes a vigorous and sometimes confusing attack on the nominee NFTL utilized by respondent in this case.  As we understand petitioner's arguments, they are as follows:

a. Petitioner's deceased mother owns the Claremore property;

b. petitioner does not own an equitable or legal interest in the Claremore property and did not own such an interest when the disputed NFTL was filed;

c. even if petitioner is deemed to own an interest in the Claremore property, it is only a partial interest and a nominee NFTL should only be used when a taxpayer who is not the owner of record actually owns all of the property in question;

d. respondent was required to consider, but did not consider, Oklahoma law in reaching his determination that the filing of a nominee NFTL was appropriate;

e. even if the filing of a nominee NFTL was arguably appropriate, respondent did not follow the necessary administrative procedures in order to file a proper nominee NFTL.

We group these arguments in three categories and address them below.

       a. <u>Petitioner's Interest in the Claremore Property</u>

The validity of any lien under section 6321 depends in the first instance on whether the taxpayer owned property or held an interest in property to which the lien may attach. Sec. 6321. Section 6321 does not create property rights but merely attaches federally defined consequences to rights created under State law. <u>United States v. Natl. Bank of Commerce</u>, <u>supra</u> at 722.

Consequently, in order to address petitioner's arguments, we must first examine whether the Appeals Office abused its discretion in determining that petitioner had an interest in the Claremore property.

While the priority of competing claims to property is determined under Federal law, whether a taxpayer owns an interest in, or exercises a right with respect to, property is determined under State law. Aquilino v. United States, 363 U.S. 509 (1960). However, "The question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law." United States v. Natl. Bank of Commerce, supra at 727; see also Drye v. United States, supra at 58.

Petitioner argues that he was not the beneficial owner of the Claremore property under Oklahoma law. He undercut his argument during the hearing and before this Court, however, by admitting that he owned an interest in the Claremore property by reason of his mother's death. Alice Criner died intestate in 1989 and was survived by six children. Okla. Stat. Ann. tit. 84, §213B.2.a (West Supp. 2003), provides that, if there is no surviving spouse, the decedent's estate is distributed in undivided equal shares to the surviving children of the decedent and the issue of any deceased child.[8] Under Oklahoma State law,

---

[8]Oklahoma State law also provides that, when a person dies intestate leaving real property, title to the real property vests

(continued...)

petitioner, as one of six surviving children of Alice Criner, inherited an interest in the Claremore property in 1989 when Alice Criner died.  Consequently, we hold that the Appeals Office did not abuse its discretion in determining that petitioner owned an interest in the Claremore property.

        b.   Respondent's Decision To Use a Nominee NFTL

Petitioner contends that the filing of a nominee NFTL is inappropriate when a taxpayer owns only a partial interest in the property.  We disagree.  A nominee NFTL lien may be used whenever legal title to property is held by a third party but equitable ownership, in whole or in part, resides with the taxpayer.  G.M. Leasing Corp. v. United States, supra.  It enables the Commissioner to perfect a lien under section 6323 on property in which a taxpayer has an interest that is titled in the name of a third party.  Id.; see also Drye v. United States, 528 U.S. 49 (1999) (holding that a disclaimer by the sole heir of an intestate decedent did not prevent a Federal tax lien with regard to the heir's unpaid tax liabilities from attaching to his inheritance); Wilkinson v. United States, 770 F. Supp. 1085

---

⁸(...continued)
immediately in the decedent's heirs, subject only to administration proceedings.  The heirs may immediately convey their interest in such property to another.  DeWitt v. Cavender, 878 P.2d 1077 (Okla. Ct. App. 1994); Fessler v. Fariss, 304 P.2d 332, 340 (Okla. 1956);  Davis v. Morgan, 95 P.2d 856 (Okla. 1939); see also Okla. Stat. Ann. tit. 84, sec. 213B.2.a. (West Supp. 2003).

(W.D.N.C. 1991); <u>United States v. Drexler</u>, 60 AFTR 2d 87-5091, 87-2 USTC par. 9493 (E.D. Okla. 1985).

We are aware, of course, that the Appeals Office determined that petitioner was the sole equitable owner of the Claremore property.[9] Petitioner argues that Oklahoma State law does not contemplate ownership in nominee form[10] and that the Appeals Office did not consider Oklahoma law in making its determination upholding the nominee lien. We reject petitioner's arguments for several reasons.

First, petitioner concedes that he owns an interest in the

---

[9]At the hearing, petitioner did not offer any of the information previously requested by Mr. Penny and Revenue Officer Baustert regarding petitioner's claim that his siblings had an interest in the Claremore property. The silence of petitioner's siblings undermines petitioner's claim that each of them owns an interest in the Claremore property but does not necessarily prevent them from asserting any ownership right that they may have. A person who claims an ownership interest in property subject to a Federal tax lien may bring a quiet title action to challenge the lien against the property. See 28 U.S.C. sec. 2410 (2000). Generally, the Federal District Courts have jurisdiction over any civil action arising under any Act of Congress providing for internal revenue. 28 U.S.C. sec. 1340 (2000).

[10]Petitioner's argument on this point is erroneous as a matter of Oklahoma State law because the concept of nominee ownership is recognized thereunder. When legal title to real property is conveyed to one person and another person furnishes the consideration for the property, a presumption arises under Oklahoma State law that the person who furnished the funds to purchase the property intended to acquire the equitable interest in that property. <u>Boatright v. Perkins</u>, 894 P.2d 1091 (Okla. 1995). See also 60 Okla. Stat. Ann., tit. 60, sec. 137 (West 1994 & Supp. 2003), which provides that "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

Claremore property, although he disputes that he is the sole owner as respondent contends. Because of petitioner's concession, the hearing officer did not have to review Oklahoma State law to decide whether petitioner owns the requisite property interest to which the Federal tax lien in this case attaches.

Second, a nominee NFTL is a collection device, and a determination by respondent to use a nominee NFTL is governed by Federal law, not by Oklahoma State law. See G.M. Leasing Corp. v. United States, 429 U.S. at 350-351. Only the determination of whether a taxpayer owns an interest in, or holds rights to, property is governed by State law. Drye v. United States, supra at 478; Aquilino v. United States, supra.

Third, even if the hearing officer was required to consider Oklahoma State law, petitioner has failed to show that he was prejudiced by any failure on the part of the hearing officer to do so. Although the transcript of the hearing reflects that the hearing officer did not research Oklahoma State law, the hearing officer referred to the substance of intestacy laws of Oklahoma in his discussions regarding the interest in the Claremore property that petitioner admits he inherited by reason of his mother's death in 1989.

Fourth, Oklahoma State law recognizes the principle of equitable or beneficial ownership on which the nominee lien is

based.  In <u>Carey v. Winslow</u>, 122 P. 174 (Okla. 1912), the Oklahoma Supreme Court found that, although certain stock was titled in the name of a third party, the judgment debtor, who had previously held legal title, had never parted with the beneficial ownership of the stock.  The court held that the stock remained subject to the judgment debtor's debts.  See also <u>Baxley v. Timms</u>, 316 P.2d 871 (Okla. 1957), in which the Oklahoma Supreme Court acknowledged that it was possible for a person to hold bare legal title to real property while the beneficial interest in the property remained in another.

We hold, therefore, that the Appeals Office did not abuse its discretion in determining that a nominee NFTL was a valid and appropriate collection procedure in this case.

c. <u>Nominee Lien Procedures</u>

Petitioner argues that, even if the use of a nominee NFTL is an appropriate collection procedure, respondent did not follow required administrative procedures in obtaining approval to file the nominee NFTL.  Specifically, petitioner contends that respondent skipped a required review step when Revenue Officer Baustert forwarded his memorandum requesting authorization to file the nominee NFTL directly to Counsel.

The Internal Revenue Manual (IRM) requires that, before a nominee NFTL is filed, the Collection Office must obtain written approval from Counsel.  2 Administration, Internal Revenue Manual

(CCH), sec. 5.12.1.18.1(3), at 16,836.  The request for approval must show that, while a third party may have legal title to the property, the taxpayer owns an interest in the property and enjoys its full use and benefit.  See 2 Administration, Internal Revenue Manual (CCH), sec. 5.17.2.4.8.2, at 17,865.  Factors which the IRM lists as support for the filing of a nominee NFTL include the following:  (1) The taxpayer previously owned the property,[11] (2) the nominee paid little or no consideration for the property, (3) the taxpayer retains possession or control of the property, (4) the taxpayer continues to use and enjoy the property conveyed just as the taxpayer had before such conveyance, (5) the taxpayer pays all or most of the expenses of the property, and (6) the conveyance was for tax avoidance purposes.  Id.

In accordance with the procedures outlined in the IRM, Revenue Officer Baustert submitted a memorandum, dated December 11, 2001, to Counsel, requesting that a nominee NFTL be authorized with respect to the Claremore property.  The memorandum listed several factors in support of the request that are enumerated in the IRM.  On January 15, 2002, Counsel approved Revenue Officer Baustert's request after reviewing the evidence

---

[11]Even if a taxpayer never transferred a particular asset to the current titleholder, a lien for his taxes may attach to it if purchased with funds he supplied.  E.g., LiButti v. United States, 107 F.3d 110, 125 (2d Cir. 1997).

supporting his request as well as additional information Counsel had obtained regarding petitioner's collection file.

At trial, petitioner argued that the following section in an ICS transcript[12] relating to petitioner's case proved that Mr. Baustert did not follow established guidelines in making his request for approval to file the nominee Notice of Federal Tax Lien:

> Reviewed copy of nominee lien approval received during ICS downtime – control opened to maintain some advisory record thereof. Unless something was missed during ICS downtime, RO submitted request directly to counsel rather than following usual procedures of routing it through advisory. As such, there was no advisory review, record, or control. It is unclear why it was not sent to counsel through advisory. Although it is acknowledged that advisory review is not required by the IRM, it has been established practice here in the absence of extraordinary circumstances.

The hearing officer testified at trial that he reviewed the ICS transcript in making his determination. He explained that, although the advisory group normally reviewed the requests to decide if any additional supporting documentation was required, collection officers sometimes worked directly with Counsel, bypassing the advisory review. According to Mr. Penny, the revenue officer was dealing with another nominee NFTL on property allegedly owned by petitioner in another location, so the revenue officer had already established a direct path to Counsel. We

---

[12]An ICS transcript is a case file transcript that is maintained by the IRS to document case file actions taken by IRS personnel.

find Mr. Penny's testimony credible on the subject of advisory review, and we note that such review was not one of the required steps enumerated in the IRM. We hold, therefore, that the Appeals Office did not abuse its discretion in determining that the requirements of any applicable law or administrative procedure have been met with respect to the nominee NFTL at issue in this case.

A.3. Consideration of Collection Alternatives

Petitioner also contends that respondent erred by not considering reasonable collection alternatives to respondent's nominee NFTL and disputes that the filing of the nominee NFTL properly balanced respondent's need for efficient collection of taxes with petitioner's concern that the collection action be no more intrusive than necessary. Petitioner, however, did not submit a completed Form 433-A, Collection Information Statement - Wage Earner, or Form 433-B, Collection Information Statement - Business, to document his claimed inability to pay. Even if petitioner had submitted completed Forms 433-A and 433-B, the disagreement between petitioner and respondent regarding the extent of his ownership interest in the Claremore property precluded any determination of petitioner's actual ability to pay the unpaid tax liabilities at issue.

We also note that petitioner did not offer any collection alternatives that would adequately protect respondent's need to

perfect a lien with respect to petitioner's ownership interest in the Claremore property. At the trial in this case, petitioner had testified that the Claremore property would remain titled in the name of his deceased mother. Under the circumstances involved in this case, the nominee NFTL was a reasonable collection procedure that enabled respondent to perfect a Federal tax lien with respect to the Claremore property. We conclude therefore that the Appeals Office did not abuse its discretion in upholding the filing of the nominee NFTL.

B. Errors Not Raised at the Hearing

In an appeal from a notice of determination under sections 6320 and 6330, we ordinarily consider only those matters that were raised in the hearing and/or considered in the notice of determination. Magana v. Commissioner, 118 T.C. 488, 493-494 (2002); Miller v. Commissioner, 115 T.C. 582, 589 n.2 (2000). As we stated in Magana v. Commissioner, supra at 493,

> it would be anomalous and improper for us to conclude
> that respondent's Appeals Office abused its discretion
> under section 6330(c)(3) in failing to grant relief, or
> in failing to consider arguments, issues, or other
> matter not raised by taxpayers or not otherwise brought
> to the attention of respondent's Appeals Office. * * *

Petitioner raised several issues for the first time in his petition that were not raised in the hearing or addressed in the notice of determination: (1) Whether the Appeals team manager whose name appears on the notice of determination actually made a determination as required by sections 6320 and 6330; (2) whether

Revenue Officer Baustert had the requisite authority to file the nominee NFTL without the written approval of his direct supervisor; (3) whether respondent abused his discretion by filing a nominee NFTL after he had already caused an NFTL to be filed against petitioner for 1993; and (4) whether respondent abused his discretion by asserting a nominee theory with respect to certain real property, the existence and ownership of which was known to respondent at least 4 years before the nominee NFTL was filed.  With the exception of the issue in (1) above, which challenges the adequacy of the notice of determination, petitioner should have raised the above-listed issues with the hearing officer at the hearing so that the Appeals Office could address the issues in its notice of determination.  Petitioner did not do so, and, as a result, the notice of determination did not address those issues.  We decline, therefore, to consider issues that could have been raised, but were not raised, at the hearing and addressed in the notice of determination.  Magana v. Commissioner, supra.

With respect to petitioner's challenge to the notice of determination, petitioner offered no evidence at trial or argument on brief to support his contention that the Appeals team manager whose name appears on the letter portion of the notice of determination did not make the determinations in the notice. Moreover, petitioner's argument misconstrues the notice of

determination, which consists of a cover letter and a summary of the hearing officer's determination regarding the matters considered at the hearing. The Appeals team manager who signed the letter portion of the notice of determination on behalf of the Appeals Office refers to the determination made as "our determination". The summary attached to the letter bears no signature and summarizes the determination made in petitioner's case. That summary is extracted verbatim from an "Appeals Transmittal and Case Memo" that was prepared by Mr. Penny and transmitted to the Appeals team manager, who approved Mr. Penny's determination on behalf of the Appeals Office. Taken in context, the determination in question is one made by Mr. Penny and approved by Mr. Penny's supervisor on behalf of the Appeals Office. Petitioner has failed to show that the determination in question is not a proper determination under section 6330.

Conclusion

Based on the record before us, we hold that the Appeals Office did not abuse its discretion in determining that respondent's filing of a nominee NFTL with respect to the Claremore property was an appropriate collection action in this case.

We have considered the remaining arguments of both parties for results contrary to those expressed herein and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.