FILED
United States Court of Appeals
Tenth Circuit

August 17, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ARLIN GEOPHYSICAL; LAURA OLSON,

      Plaintiffs,

v.

UNITED STATES OF AMERICA,

      Defendant Counterclaimant - Appellee,

v.

JOHN E. WORTHEN; FUJILYTE CORPORATION,

      Counterclaim Defendants - Appellants.

No. 15-4166
(D.C. No. 2:08-CV-00414-DN-EJF)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

Nearly one decade ago, the Internal Revenue Service filed a notice of federal tax lien to recover over $12 million in unpaid taxes from John Worthen. In 2015, the district court granted final judgment for the government on its action to enforce the tax lien. To satisfy the judgment, the court also ordered the sale of two properties in

_____

[*] This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. _See_ Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Utah owned by Worthen's company, Fujilyte Corporation (Fujilyte). Because the district court granted final judgment without providing Worthen and Fujilyte an adequate opportunity to respond to the government's assertion that Fujilyte holds title to those properties as Worthen's alter ego or nominee, we vacate the judgment and the order of sale and remand for further proceedings.

# I

In February 2008, the IRS filed a notice of federal tax lien identifying Laura Olson, Arlin Geophysical Company (Arlin), and Fujilyte as Worthen's alter egos or nominees.[1] The lien encumbered 10 properties owned by Arlin, three properties owned by Olson, and two properties (Properties 14 and 15) owned by Fujilyte. Olson and Arlin filed the underlying quiet-title action to discharge the lien and quiet title in their properties.

The government filed an answer and counterclaim. In its Fifth Amended Counterclaim, the government asserted two claims; only the second claim is at issue

---

[1] The IRS may satisfy a tax deficiency by imposing a lien on the delinquent taxpayer's "property" or "rights to property." *Drye v. United States*, 528 U.S. 49, 55 (1999) (quoting 26 U.S.C. § 6321). The IRS may also impose a lien against "property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005)); *see also Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007) ("The nominee theory focuses upon the taxpayer's relationship to a particular piece of property."). In determining whether a third party is a taxpayer's nominee, "[t]he ultimate inquiry is whether the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership." *Holman*, 505 F.3d at 1065.

in this appeal.[2] In that claim, the government sought to enforce the lien as to all 15 properties and named over 30 counterclaim defendants with potential interests in those properties. *See* 26 U.S.C. § 7403(b) ("All persons having liens upon or claiming any interest in the property involved in [a lien enforcement] action shall be made parties thereto."). As relevant to this appeal, the government named Worthen, Fujilyte, John F. Green, and Stephen Homer as counterclaim defendants holding interests in Properties 14 and 15.

The government alleged that (1) Fujilyte holds title to Properties 14 and 15, (2) Fujilyte granted Green a trust deed with respect to both properties in 1996, and (3) Homer was appointed as successor trustee under the trust deed in 1997. Worthen and Fujilyte admitted the truth of these allegations. The government further alleged that Fujilyte's interests in Properties 14 and 15 arise from either (1) Fujilyte's status as a nominee or alter ego of Worthen, or (2) Worthen's fraudulent transfer of the subject properties to Fujilyte. Worthen and Fujilyte denied the truth of these allegations.

In 2011, Homer filed a motion for partial summary judgment (the Homer motion) purportedly on behalf of himself and Green.[3] Homer asserted that he and

---

[2] In the first claim, the government sought to reduce the unpaid balance of the tax assessments against Worthen to judgment. Worthen and the government jointly stipulated that Worthen now owes $18 million in unpaid taxes, and the district court entered judgment in the government's favor. Worthen doesn't challenge this judgment on appeal.

[3] Green died in March 2008. Homer, Green's attorney, failed to mention that fact in the Homer motion.

Green had "'trust deed mortgage' interests" in Properties 14 and 15, and that those interests had priority over any interests the government might have through its tax lien. R. vol. 1, 134.

In its response opposing the Homer motion, the government disputed or partially disputed all but one of Homer's asserted material facts, asserted several additional material facts, and urged the court to deny the motion for several reasons. As relevant to this appeal, the government argued that because the statute of limitations for foreclosing on the trust deed expired in 2003, Homer and the Green heirs[4] had no enforceable interests in Properties 14 and 15. In contrast, the government argued, it has an enforceable interest in those properties because (1) Worthen owes unpaid taxes; (2) "the real estate transactions purportedly engaged in by Fujilyte [to obtain title to those properties] created both a resulting and a constructive trust in favor of Worthen" under Utah law, R. vol. 2, 27; (3) Fujilyte is therefore Worthen's nominee under federal law; and (4) the government's "federal tax lien [therefore] reaches the assets held by Fujilyte," *id.* at 29. Thus, the government argued, it could rely on its lienholder status to assert the statute-of-limitations defense against Homer and Green on Worthen's behalf.

---

[4] The government urged the court to deny the Homer motion as to Green because Green died before the government commenced its enforcement action—a fact that the government was unaware of until July 2011. The court later granted the government's motion to substitute Debra Green Udy, Claudia Green Burton, John M. Green, and Rebecca Green Eggers (the Green heirs) for Green.

In a series of three docket text orders, the district court sought further input from Homer before resolving the Homer motion. First, on March 24, 2014, the district court notified Homer that he had until April 7, 2014, to file a reply to the government's response. Homer didn't file a reply. Next, on July 11, 2014, the court notified Homer that it might grant summary judgment to the government based on the statute-of-limitations defense. And it gave Homer until August 1, 2014, to file a response. *See* Fed. R. Civ. P. 56(f)(1) (permitting court to grant summary judgment for nonmovant "[a]fter giving notice and a reasonable time to respond"). Homer didn't file a response. Finally, on August 25, 2014, the court directed the government to prepare a proposed order denying the Homer motion and granting summary judgment for the government under Rule 56(f)(1). The court gave Homer seven days from the filing of the proposed order to file objections. Again, Homer failed to file any objections, while Worthen and Fujilyte did file objections.

But Worthen and Fujilyte didn't object to the denial of the Homer motion or the grant of summary judgment for the government based on the statute of limitations. Instead, they objected to the first 10 facts in the proposed order and the portion of the proposed order's legal analysis resolving that "Fujilyte's property is held by it under several theories of alter ego, constructive trust, nominee, etc. for the benefit of John Worthen." R. vol. 5, 26. In support, they argued that (1) the legal analysis wasn't necessary to resolve the statute-of-limitations issue; (2) the first 10 facts weren't material to that issue; and (3) the government didn't support those facts with evidence as required by Fed. R. Civ. P. 56(c).

5

After receiving a response from the government, the district court overruled Worthen and Fujilyte's objections. The court then entered a separate order largely adopting the government's proposed order. In that order (the summary judgment order), the court denied the Homer motion and granted summary judgment to the government under Rule 56(f)(1). In adopting the government's facts, the court noted both that (1) the government supported those facts with evidence, and (2) Homer's failure to reply to the government's response "le[ft] the [government's] facts undisputed." R. vol. 5, 41 n.13. And in adopting the government's legal analysis, the court concluded that any claims Homer and the Green heirs may have had arising from their interests in the subject properties were time-barred. Critically, for purposes of this appeal, the court further concluded that Fujilyte holds title to Properties 14 and 15 as Worthen's nominee and that the government therefore has an enforceable lien against those properties.

In June 2015, the government moved for final judgment and an order of sale. The government asserted that all issues relating to Properties 14 and 15 had been resolved; that the summary judgment order resolved all claims against the properties with respect to Homer, Green, and the Green heirs; and that "the [c]ourt's summary judgment order found that the [government] has a lien on Properties 14 and 15 because the properties were subject to constructive and resulting trusts in favor of [Worthen], and [Fujilyte], the record title holder, was [Worthen]'s nominee." R. vol. 5, 53. Finally, the government generally asserted that it was entitled to final judgment

6

because "[b]ased on the procedural history, all issues with respect to Property 14 and Property 15 ha[d] been fully litigated." *Id.* at 54.

In a docket text order entered on June 30, 2015, the court provided a 10-day deadline for responses to the government's motion and an additional six days for filing a reply to any such response. Fujilyte timely responded, disagreeing with the government's assertion that all issues relating to the subject properties had been "fully litigated." R. vol. 5, 71 (emphasis omitted) (quoting *id.* at 54). And it argued that because it wasn't a party to the summary judgment proceeding, it lacked notice and an opportunity to respond to the government's position on the nominee issue. Thus, Fujilyte asserted, the court couldn't rely on its findings and conclusions from the summary judgment order regarding Fujilyte's status as Worthen's nominee to grant final judgment for the government against Fujilyte.

The government disagreed. In its reply, the government argued that Fujilyte (1) challenged the court's factual findings in the summary judgment order when Worthen and Fujilyte objected to the government's proposed order; (2) Fujilyte is bound by the court's findings in the summary judgment order under the law-of-the-case doctrine; and (3) Worthen and Fujilyte tried but failed to refute the government's facts in their response to the motion for final judgment.

During a hearing on the government's motion for final judgment, Worthen and Fujilyte primarily argued that they weren't bound by the findings and conclusions from the court's summary judgment order because they weren't parties to the summary judgment proceeding. At one point during the hearing, the court asked,

7

"What evidence—how would it be different—what procedure would you propose be required to be followed to adjudicate what you claim is unadjudicated?" R. vol. 5, 178. Counsel for Worthen and Fujilyte replied that the government should "file a motion for summary judgment if [it] want[s] to proceed that way or [let] the matter go to trial so [Worthen and Fujilyte] have an opportunity to defend [against the government's position]." *Id.*

In September 2015, the court granted final judgment for the government. In doing so, the court reasoned that Fujilyte (1) "contest[ed] the [c]ourt's findings and failed to refute the [c]ourt's conclusions" in the summary judgment order by objecting to the government's proposed order; (2) failed to appeal from the order overruling those objections or the summary judgment order; and (3) was barred by the law-of-the-case doctrine from "re-litigat[ing] Fujilyte's status as Worthen's nominee." R. vol. 5, 150. That same day, in a separate order, the court ordered the sale of Properties 14 and 15. Worthen and Fujilyte appeal.

## II

Before considering the merits of this appeal, we must resolve two questions implicating our jurisdiction: (1) whether the district court's judgment is final, and (2) if so, whether the notice of appeal is deficient. We review these questions de novo. *Montez v. Hickenlooper*, 640 F.3d 1126, 1130 (10th Cir. 2011).

After Worthen and Fujilyte submitted their docketing statement, we issued a show-cause order directing the parties to address whether the district court's judgment was final as to all claims and all parties. *See* 28 U.S.C. § 1291 (conferring

8

jurisdiction over final decisions); *Utah v. Norton*, 396 F.3d 1281, 1286 (10th Cir. 2005) ("A final judgment is one that terminates 'all matters as to all parties and causes of action.'" (quoting *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003))). In response, the parties assert that the district court resolved all claims against all parties. Having independently reviewed the parties' responses and the district court record, we agree. Thus, we find no jurisdictional impediment with respect to finality.

But in its response to our show cause order, the government identifies a second potential jurisdictional issue. Relying on *United States v. Simons*, the government argues that the final, appealable order in this case is the order directing the sale of Properties 14 and 15, not the order granting judgment for the government on its action to enforce the lien. *See* 419 F. App'x 852, 855 (10th Cir. 2011) (unpublished) ("It has long been established that 'a decree of sale in a foreclosure suit, which settles all the rights of the parties and leaves nothing to be done but to make the sale and pay out the proceeds, is a final decree for the purposes of an appeal.'" (quoting *Grant v. Phoenix Mut. Life Ins. Co.*, 106 U.S. 429, 431 (1882))). Thus, the government reasons that the notice of appeal is jurisdictionally defective because it designates the order granting judgment, not the order of sale. *See* Fed. R. App. P. 3(c)(1)(B) (requiring notice of appeal to designate "judgment, order, or part thereof being appealed").

"Rule 3(c)(1)(B)'s designation requirement is jurisdictional." *Williams v. Akers*, 837 F.3d 1075, 1078 (10th Cir. 2016). But we construe that designation

9

requirement liberally. *Id.* In fact, after pointing out this potential defect in the notice of appeal, the government urges us to overlook it because the record demonstrates Worthen and Fujilyte's intent to appeal from the order of sale. *See, e.g.*, *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000) (rejecting challenge to adequacy of notice of appeal when docketing statement clearly set forth issues on appeal, appellees had notice of issues, and appellees suffered no prejudice from appellant's failure to reference specific order).

We agree that the notice of appeal is sufficient to confer jurisdiction. As the government points out, (1) the district court issued the judgment enforcing the tax lien and the order of sale on the same day; (2) the judgment expressly provides for the sale of the subject properties and references the separate order of sale; and (3) the docketing statement indicates that the judgment permits the sale of the properties to satisfy the judgment. Having confirmed our jurisdiction, we turn to the merits.

## III

Worthen and Fujilyte argue that the district court erred in granting the government's motion for final judgment and ordering the sale of Properties 14 and 15. Specifically, they contend that the court committed reversible error when it relied on its findings and conclusions from the summary judgment order regarding Fujilyte's purported status as Worthen's nominee. They argue that those findings and conclusions cannot bind them because they weren't parties to the summary judgment proceeding; thus, they assert that they never had a meaningful opportunity to defend against the government's position on the nominee issue.

10

The government urges us to affirm the final judgment. It asks us to treat the final judgment as a sua sponte grant of summary judgment under Rule 56(f)(3). And it argues that the court, as required by Rule 56(f), gave Worthen and Fujilyte notice and reasonable opportunities to respond to the government's position on the nominee issue before entering final judgment.

Both parties suggest that the appropriate standard of review is the de novo standard we apply in reviewing summary judgment rulings. But as the procedural history demonstrates, and as we discuss below, the district court issued only one summary judgment order: the order denying the Homer motion and granting summary judgment to the government under Rule 56(f)(1). And Worthen and Fujilyte don't challenge that order on appeal.

Instead, they argue the district court erred in relying on the findings and conclusions it made in that order when it subsequently granted final judgment to the government. Specifically, they argue that the district court deprived them of notice and a meaningful opportunity to be heard. This argument sounds in due process, *see Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))), and presents a legal question that we review de novo, *In re C.W. Mining Co.*, 625 F.3d 1240, 1244 (10th Cir. 2010).

## A

While Worthen and Fujilyte don't challenge the summary judgment order, a brief review of the summary judgment proceeding is helpful in understanding their challenge to the final judgment. As we've discussed, Homer moved for partial summary judgment against the government, asserting that Homer's and the Green heirs' interests in Properties 14 and 15 were superior to the government's interests in those properties. The government opposed the Homer motion. In its response, the government disputed Homer's asserted facts, asserted its own facts, and asserted a statute-of-limitations defense. But Homer didn't reply to the government's response even after the court thrice invited him to do so. Thus, the court deemed the government's facts undisputed for purposes of the Homer motion. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). And the court denied the Homer motion.

The court then applied Rule 56(f)(1) to grant summary judgment to the government—i.e., the nonmovant—based on the statute-of-limitations defense. Rule 56(f)(1) permits a district court to grant summary judgment for a nonmovant "[a]fter giving notice and a reasonable time to respond." There's no question that the court gave Homer notice and a reasonable time to respond. And in granting summary judgment to the government, the court didn't just rely on Rule 56(e)(2) to deem the government's facts undisputed based on Homer's failure to reply. Rather, the court

12

additionally determined that the government supported those facts with documentary evidence. *See* Fed. R. Civ. P. 56(c).

Worthen and Fujilyte concede on appeal that it "was appropriate" for the district court to deny the Homer motion and grant summary judgment for the government and against Homer and the Green heirs under Rule 56(f)(1). Rep. Br. 1. And we find nothing objectionable about the district court's application of Rule 56 during the summary judgment proceeding. But as we next discuss, we agree with Worthen and Fujilyte that the district court erroneously relied on its findings and conclusions from the summary judgment order—specifically, it's conclusion that Fujilyte is Worthen's nominee—to grant final judgment to the government.

**B**

Several months after the court granted summary judgment for the government and against Homer and Green under Rule 56(f)(1), the government moved for final judgment. It asserted that it was entitled to final judgment because "all issues with respect to Property 14 and Property 15 ha[d] been fully litigated." R. vol. 5, 54. Specifically, regarding any property interests held by Fujilyte, the government pointed to the court's finding from the summary judgment order that "the [government] has a lien on Properties 14 and 15 because the properties were subject to constructive and resulting trusts in favor of [Worthen], and [Fujilyte], the record title holder, was [Worthen]'s nominee." *Id.* at 53.

Four days after the government filed its motion for judgment, the district court issued a docket text entry, imposing a 10-day deadline for responses. Worthen and

13

Fujilyte timely filed a response opposing the motion; the government filed a reply; and the court held a hearing on the motion. In granting final judgment for the government, the court accepted the government's position that Worthen and Fujilyte were bound by the court's findings and conclusions on the nominee issue from the summary judgment order. In doing so, the court specifically reasoned that Worthen and Fujilyte (1) objected to the government's facts in the proposed summary judgment order, but failed to refute the court's conclusions on the nominee issue; (2) failed to appeal the order overruling their objections or the summary judgment order; and (3) couldn't relitigate the nominee issue because the law-of-the-case doctrine barred them from doing so.

To its credit, the government concedes that Worthen and Fujilyte weren't actually parties to the summary judgment proceeding. But it defends the court's first reason for granting final judgment by asserting that Worthen and Fujilyte nevertheless "participated in th[at] proceeding[] when they objected to the [g]overnment's proposed order, which addressed the nominee issue." Aplee. Br. 25. We reject the government's position.

As Worthen and Fujilyte have consistently argued, they weren't parties to the summary judgment proceeding. And as they argue on appeal, lodging an objection—as nonparties—to a proposed order resolving a motion involving other parties doesn't have the same procedural impact as responding—as parties—to a motion seeking summary judgment against them on the nominee issue.

14

Worthen and Fujilyte's status as nonparties to the summary judgment proceeding also requires us to reject the district court's second stated reason for concluding they were bound by the summary judgment order. The court faulted Fujilyte for failing to appeal (1) the order overruling their objections to the proposed summary judgment order and (2) the summary judgment order itself. But we can hardly blame Worthen and Fujilyte for not appealing from a summary judgment order that wasn't entered against them. And in any event, neither order was final or certified as final for purposes of an appeal. *See* Fed. R. Civ. P. 54(b) ("[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.").

Finally, and for similar reasons, we reject the district court's third stated reason for granting final judgment to the government—namely, its application of the law-of-the-case doctrine. *See Gage v. Gen. Motors Corp.*, 796 F.2d 345, 349 (10th Cir. 1986) ("The law of the case rule applies only when there has been a final decision."); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order . . . , however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (explaining that "district courts generally remain free to reconsider their earlier interlocutory orders" until they enter final judgment (quoting *Been v. O.K. Indus.,* 495 F.3d 1217, 1225 (10th Cir. 2007))).

15

Consequently, none of the court's proffered justifications support its conclusion that Worthen and Fujilyte are bound by the findings and conclusions in the summary judgment order.

Perhaps sensing the fragile underpinnings of the final judgment, the government invites us to treat it as a summary judgment order appropriately issued under Rule 56(f)(3). Rule 56(f)(3) permits a court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Before granting sua sponte summary judgment, the court must give the losing party "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f); *see A.M. v. Holmes*, 830 F.3d 1123, 1136-37 (10th Cir. 2016) ("'While the practice of granting summary judgment sua sponte is not favored,' we will affirm the judgment when the losing party has received adequate notice of the need to marshal evidence." (quoting *Scull v. New Mexico*, 236 F.3d 588, 600 (10th Cir. 2000))).

Relying on *A.M.*, *Scull*, and other cases involving sua sponte grants of summary judgment, the government urges us to affirm the final judgment because, the government argues, Worthen and Fujilyte had notice and three opportunities to respond to the government's position on the nominee issue before the court entered final judgment against them. First, the government points out that Worthen and Fujilyte "lodged an objection to the [g]overnment's proposed order granting summary judgment." Aplee. Br. 34. But we've already rejected the government's attempt to equate these nonparty objections with an opportunity to defend against the government's position on the nominee issue.

16

Second, the government argues that its motion for final judgment, and the court's order for a response to that motion, put Worthen and Fujilyte on notice that the court might enter judgment against them on the nominee issue "based upon the facts as stated in the court's order granting summary judgment." Aplee. Br. 35. And, it argues, the court gave them reasonable time to respond to that motion. Finally, the government argues that the court gave Worthen and Fujilyte a third opportunity to address the nominee issue at the motion hearing when the court asked them what issues they believed were left to be adjudicated.

But we aren't persuaded that we should treat the final judgment as a Rule 56(f)(3) summary judgment order. The government's argument ignores the fact that it moved for final judgment. *See* R. vol. 5, 56 ("Upon *motion* of Defendant and Counterclaim Plaintiff the United States of America, and for good cause shown, the Court hereby GRANTS the *motion* for judgment." (emphases added)). The existence of a pending motion necessarily precludes the district court from "consider[ing] summary judgment on its own." Fed. R. Civ. P. 56(f)(3). Thus, we decline the government's invitation to treat the final judgment as a Rule 56(f)(3) sua sponte summary judgment order.[5]

---

[5] Even if we were to accept the government's characterization of the final judgment as a grant of summary judgment under Rule 56(f)(3), we would conclude that neither the district court's 10-day deadline for filing a response to the motion for final judgment nor the court's inquiries at the motion hearing provided Worthen and Fujilyte a meaningful opportunity to respond to the government's facts and defend against the government's legal arguments on the nominee issue.

Moreover, the government's reliance on cases discussing the level of notice that must be given to the losing party before a court sua sponte enters summary

Rather, we will treat the final judgment as it presents itself: as a final judgment entered for the government and against Worthen and Fujilyte on the basis of findings and conclusions that the court reached in resolving a dispute between different parties—i.e., the lien-priority dispute between the government and Homer and Green. And we conclude that because Worthen and Fujilyte lacked a meaningful opportunity to defend against the position the government advanced in that dispute, they can't be bound by those findings and conclusions.

\* \* \*

The district court erred in adopting the government's position that all issues relating to Fujilyte's purported status as Worthen's nominee had been fully litigated. By relying on its findings and conclusions from the summary judgment order, the district court effectively (1) treated the government's response in opposition to the Homer motion as a de facto motion for summary judgment against Worthen and

judgment under Rule 56(f)(3) is misplaced. Critically, none of the cases the government cites address the peculiar procedural posture presented here—i.e., the district court denied summary judgment for the movant, granted summary judgment in favor of a nonmovant under Rule 56(f)(1), and later relied on its findings and conclusions from the summary judgment order to grant final judgment against two parties who weren't parties to the summary judgment proceeding. *See, e.g.*, *A.M.*, 830 F.3d at 1136 (rejecting plaintiff's argument that district court erred in granting summary judgment to nonmovant defendant because court failed to give plaintiff notice and opportunity to respond to qualified immunity defense asserted by defendant in response to plaintiff's summary judgment motion; reasoning plaintiff anticipated that defense in her motion and filed a reply addressing defendant's response); *Scull*, 236 F.3d at 600-01 (affirming grant of summary judgment to moving defendants and sua sponte grant of summary judgment to additional nonmoving defendants; reasoning plaintiff suffered no prejudice because she responded to moving defendants' motion and all of the defendants were entitled to qualified immunity for mainly the same reasons addressed in plaintiff's response).

18

Fujilyte on the nominee issue, and (2) granted final judgment for the government on that issue without providing Worthen and Fujilyte a meaningful opportunity to defend against the government's position on that issue. Thus, we vacate the judgment and the order of sale and remand for further proceedings.

Entered for the Court

Nancy L. Moritz
Circuit Judge